**WALTER E. ZEMITZSCH, INC.,**
**Appellant-Respondent,**

v.

**Franklin W. HARRISON, et al.,**
**Respondents-Appellants.**

Nos. 49330, 49256.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 22, 1986.

Motion for Rehearing and/or Transfer Denied May 28, 1986.

Application to Transfer Denied July 15, 1986.

Rene E. Lusser, St. Louis, for respondents-appellants.

Frank Susman, Clayton, for appellant-respondent.

STEPHAN, Chief Judge.

Defendants-Appellants Franklin W. Harrison, Charles Leon Williams, Franklin Casey Harrison, and Harrison-Williams Fixtures, Inc. appeal from a judgment against them for unfair competition. The trial court awarded plaintiff-respondent Walter E. Zemitzsch, Inc. injunctive relief against

appellant Franklin W. Harrison and damages of $50,000 against all appellants, jointly and severally, as compensation for unfair headstart. We reverse the judgment against the defendants and affirm the denial of attorney's fees sought by plaintiff corporation.

Appellants allege the trial court erred in issuing the injunction in that it violates Missouri law regarding unfair competition. Appellants further allege trial court error in the award of damages for unfair headstart, or short cut, on the grounds that there were no legal rights violated and no evidence showing the amount of any loss claimed by the respondents.

The following statement includes most of the facts found by the trial court. Respondent Walter E. Zemitzsch, Inc., is a closely-held, family-owned Missouri corporation employing about twenty-five people, engaged in the manufacturing of store fixtures.

Appellant Franklin W. Harrison had been employed by respondent corporation as sales manager for twenty-seven years and was promoted to vice-president in 1977. Appellant Charles Leon Williams had been employed by respondent for twenty-five years and was promoted to plant superintendent in 1977. Appellant Franklin Casey Harrison (hereinafter Casey Harrison), Franklin W. Harrison's son, began his employment with respondent in 1978 and was promoted to foreman of the assembly department.

While still employed by respondent Zemitzsch, the three individual appellants organized their own corporation, which was chartered in September of 1983 as appellant Harrison-Williams Fixtures, Inc. On February 1, 1984, appellant Franklin W. Harrison informed Betty Zemitzsch Whalen, the president of Zemitzsch, that the three appellants were leaving the corporation. Whalen accepted the resignations effective February 2, 1984. Thereafter appellant corporation began to solicit clients, including Edison Brothers Shoe Stores. Edison Brothers had been a major customer of respondent corporation since 1926,

and since 1977 had provided between 75 and 80 percent of Zemitzsch's business. While employed by Zemitzsch, appellant Franklin Harrison had been the sole account representative to Edison Brothers and admitted he had great discretion in all areas of handling the Edison Brothers' account.

In March of 1984, Edison Brothers began ordering display units from appellant corporation. The trial court found that since March 6, 1984, appellant corporation had received over $210,000 in orders from Edison Brothers while Zemitzsch had received about $124,000 in orders from Edison Brothers.

Zemitzsch's petition alleged that the appellants wrongfully used confidential information and trade secrets acquired during their employment to divert business from Zemitzsch. The trial court held appellants did not utilize trade secrets, but because of their long knowledge of respondent's system the appellants received an unfair headstart for which Zemitzsch should receive $50,000 in compensation. The trial court also held that Franklin W. Harrison breached both his fiduciary duty as a corporate officer and his confidential relationship with Zemitzsch. The trial court enjoined Harrison from any dealing with Edison Brothers in products and services of any kind similar to those of respondent for a period of two years.

Appellants argue that Franklin Harrison gained knowledge through his general work experience, not through a confidential relationship, and was therefore entitled to use that information after he left the company. Appellants further argue that the assessment of headstart damages against them was in error because appellants did not take any documents with them; the plans appellants used in their new business were supplied by Edison Brothers.

Initially we note that an appellate court may not reverse a court tried case unless there is no substantial evidence, unless the holding is against the weight of the evidence, or unless the trial court erroneously applied the law. A decision may be re-

versed as against the weight of the evidence only if there is a firm belief that the judgment is wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The law recognizes that employees may agree among themselves to compete in the future with their employer upon termination of their employment. *National Rejectors, Inc. v. Trieman,* 409 S.W.2d 1, 26 (Mo. banc 1966). The issues in cases such as these frequently require a balancing of two strong public policies—the protection of the established business and the encouragement of free competition. Ordinarily this balance heavily favors the business starting up, but it can be upset by evidence of misconduct on the part of the individuals involved. *National Rejectors,* supra, at 39.

■ In the present case, the trial court enjoined Franklin Harrison on the grounds he misused confidential information and breached his fiduciary duty as a corporate officer. With respect to the first ground, an employer-employee relationship, without more, is insufficient to cause a confidential relationship to exist as to knowledge naturally acquired during employment. In order for there to be a confidential relationship between an employer and an employee "[t]here must be either an express understanding as to the confidential nature of the information or it must be acquired under such circumstances that the employee must necessarily be aware of the confidence reposed in him." *National Rejectors,* supra, at 35.

■ In the present case, Zemitzsch does not maintain that Franklin Harrison was asked or agreed to keep the information secret. The trial court based its finding of a confidential relationship on the grounds that information relating to respondent's operations, costs, profit figures, pricing structures, source of raw material, timing of production, and identity of personnel at client companies was information entrusted solely to Franklin Harrison. This finding is not based on substantial evidence in the record. To the contrary, the evidence shows that pricing at Zemitzsch was determined by the company's accountant who considered the costs of material, time, and labor, and then multiplied the total by a factor. This figure was then submitted to Franklin Harrison and the company's president for discussion and decision about increasing the base figure. The evidence also shows that Franklin Harrison was never furnished with the company's profit statement. The plant's operations were guided by Charles Leon Williams, the plant superintendent, who also did a large amount of product purchasing for Zemitzsch.

In a case in which a division manager and sales and administrative staff resigned and formed a competing company, the court therein stated:

> Through their knowledge of the market and personal contacts they may be able to capture substantially all of plaintiff's business. But the knowledge they will use for this purpose is nonetheless generally unprotectable. It is obvious that the identity of the customers with which the St. Louis office dealt is not a trade secret. The important ones were ... known to anybody in the business. As to [the customers'] individual requirements, such data is not common knowledge to the same extent. But it is still information obtainable without recourse to misappropriation from a former employer. There is no reason to doubt that most price information is similarly obtainable.

*Metal Lubricants Company v. Engineered Lubricants Co.,* 284 F.Supp. 483, 488 (E.D.Mo.1968), *aff'd.,* 411 F.2d 426 (8th Cir.1969). Although the above quotation is in specific reference to trade secrets, it is equally applicable to show that the information possessed by Franklin Harrison in this case was not confidential because that information was known or easily obtainable by others.

■ The area in which Franklin Harrison had the most discretion and control was in his dealings with Edison Brothers. It has been recognized that "... in the sales in-

dustry the goodwill of a customer frequently attaches to the employer's sales representative personally; the employer's product becomes associated in the customer's mind with that representative." *Continental Research Corporation v. Scholz*, 595 S.W.2d 396, 401 (Mo.App.1980). These "customer contacts" are protectable, but not under a theory of confidential relationship or trade secret. Because sales personnel may "exert a special influence over that customer and entice that customer's business away from the employer," the proper means of protection is a non-competition agreement. *Id.* Franklin Harrison should not be held liable for respondent's failure to take precautions.

Because of our finding that Franklin Harrison did not possess confidential information, it necessarily follows that we are in agreement with the trial court's ruling that trade secrets were not involved in this case. "The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret." *National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 19 (Mo. banc 1966) (quoting the Restatement of Torts, Section 757).

■ The trial court also held Franklin Harrison breached his fiduciary duty as a corporate officer. The key issue in this area is the determination of where the fiduciary obligation ends and where the personal right of independent action begins. It is clear that an individual who is a 25 percent stockholder, vice-president and director of one corporation may not simultaneously work for a directly competing company. *Opie Brush Company v. Bland*, 409 S.W.2d 752, 755–757 (Mo.App.1966). Additionally, confidential information acquired by a director of a corporation while acting as a fiduciary cannot be made public property merely because he separates himself from the corporation. *Opie Brush*, supra, at 758.

The facts in the instant case are distinguishable. Franklin Harrison was a vice-president at Zemitzsch, but his authority was limited. He was never furnished with the company's profit statement; he had never been informed of any executive salaries; he was not informed of personnel on the payroll; and he was not authorized to sign the company's checks. Unlike the situation in *Opie Brush*, he was not a director or shareholder. As set out above, Franklin Harrison was not in possession of any confidential information.

The facts surrounding the formation of the new corporation show that although Harrison-Williams Fixtures, Inc. was incorporated in September of 1983, the company did not go into active business until March 1, 1984, the date on which a building lease was signed. Appellants received their first order on March 6, 1984. Although Franklin Harrison had discussed the possibility of forming a new company with the Edison Brothers representative, prior to his leaving Zemitzsch, there was no evidence that Edison Brothers had given, promised or guaranteed any business to appellants before February 2, 1984. Additionally, there was evidence that Franklin Harrison deferred corporate opportunity to Zemitzsch while he worked there. On the basis of these facts, we decline to find appellant Franklin Harrison breached his fiduciary duty to respondent Zemitzsch. In light of this holding and because no confidential information was involved, we reverse the injunction against Franklin Harrison.

■ We turn now to the issue of the $50,000 damages assessed against all appellants for unfair headstart, or short cut liability. In order to receive compensation for short cut liability, a plaintiff corporation must show that its property, such as documents, drawings, blueprints, or materials, had been misappropriated or misused. *National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 44 (Mo. banc 1966). The measure of damages is the profits the plaintiff corporation lost as a result of competition from the defendant corporation, for the period of time that the defendant corporation would not otherwise have been in production, absent the misappropriation or misuse of the plaintiff corporation's property. *Id.*

The evidence is clear in this case that there were no papers, drawings, blueprints or measurements misappropriated from Zemitzsch by appellants. In the absence of any showing of improper use of respondent's materials by appellants, we decline to find short cut or headstart liability. Therefore, we reverse the trial court's damage award.

Finally, appellants appeal regarding the assessment of the amount of damages, and respondent corporation cross-appeals for an award of attorney's fees. Since we find no liability on the part of appellants, these issues are moot.

We reverse the judgments against appellants and affirm the denial of attorney's fees.

SIMON, P.J., and SATZ, J., concur.