INAUEN PACKAGING EQUIPMENT CORPORATION, d/b/a VC999, Silvio Weder, Inauen Maschinen, AG, Bernhard Inauen, Appellants–Respondents,

v.

INTEGRATED INDUSTRIAL SERVICES, INC., John and Beverly Cremer, Respondents–Appellants.

Nos. WD 53820, WD 53915.

Missouri Court of Appeals, Western District.

May 19, 1998.

**362**

Gary M. Steinman, Schultz, Bender, Maher, Lee, Sexton & Hill, Gladstone, for appellants.

Kelly C. Tobin, King Hershey Coleman Koch & Stone, Kansas City, for respondents.

Before ELLIS, P.J., and HOWARD and RIEDERER, JJ.

ELLIS, Presiding Judge.

John and Beverly Cremer were the sole shareholders of all outstanding stock of Integrated Industrial Services, Inc., d/b/a I2S Packaging ("Integrated"). John Cremer was also Integrated's president. Integrated was in the business of manufacturing, repairing,

and refurbishing rollstock packaging machines.[1] Inauen Packaging Equipment Corporation, d/b/a VC999 USA ("VC999") was a Missouri corporation owned by Silvio Weder, a Missouri resident, and Bernhard Inauen, a resident of Switzerland. Mr. Inauen also owned Inauen Maschinen, AG, a Swiss company in the business of manufacturing and selling rollstock packaging machines. VC999 was in the business of marketing and selling machines for Inauen Maschinen.

In 1994, Integrated was in the process of developing and building a new rollstock packaging machine which would sell for a lower price than other similar machines on the market. Integrated also leased space in its building to VC999 for three years beginning March 1, 1994 and ending February 28, 1997. Since VC999 leased space in the Integrated building, Weder often talked to John and Beverly Cremer. Weder and Inauen discussed with the Cremers the possibility of buying a portion of Integrated so that VC999 could sell Integrated's new machine. On July 5, 1994, Inauen, Weder and the Cremers entered into an agreement whereby Inauen and Weder would purchase seventy percent of the stock of Integrated. The parties memorialized their agreement in a writing which provided the following:

> This agreement drawn this 5th day of July, 1994 between Integrated Industrial Services, Inc. d/b/a I2S Packaging, John and Beverly Cremer and Inauen Maschinen, Bernard Inauen and an individual, Silvio Weder. We hereby agree the following percentages of ownership in the new company.
>
> | | |
> |---|---|
> | John Cremer, I2S Packaging | 30% |
> | Bernard Inauen, Inauen Maschinen | 51% |
> | Silvio Weder | 19% |

Selling price is agreed as $335,000. The $50,000 payment received today is good faith downpayment monies. Balance of monies will be paid at closing.

On July 5, 1994, VC999 tendered a check to the Cremers for $50,000.00. On September 30, 1994, VC999 ordered from Integrated one of the new machines it had developed,

the IMAG Eagle 8000 ("Eagle 8000") for $47,000.00. VC999 gave Integrated a downpayment check of $23,500.00, the balance to be paid upon delivery of the Eagle 8000 on October 15, 1994. Then, on October 10, 1994, VC999 tendered to Integrated another check for $100,000.00 toward its purchase of seventy percent of Integrated stock.

The Eagle was never delivered to VC999 on October 15, 1994. On November 10, 1994, Mr. Cremer told Silvio Weder that Weder no longer had any responsibilities on the manufacturing side of Integrated. Cremer also delivered to Weder and Bernard Inauen the following letter:

Dear Bernie:

It is with mixed emotions and deep regret that I must write this letter. I have given a great deal of thought to this entire transaction over these last four months that Silvio and I have been working together. Although Silvio and I have tried very hard to work together, it is clear to me now that it simply is not possible. Silvio and I cannot work together under the same roof, each managing portions of I2S. Our managerial styles are like oil and water and will never mix. There are many instances where there is a complete difference of opinion, managerial strategies and priorities. Whether one or both of us is totally correct or totally wrong is not the question, the point is, we are simply just totally incompatible in our approaches to the operation of I2S. There are times when hard facts must be faced and this is one of them. How we resolve the problem is another.

There are a number of options that are available to us:

1. The most obvious, but not necessarily the best, would be simply to decide not to do the transaction at all and each of us go our separate ways. That would require us to work out some details as a result of the things we have done in the past few months but it would not be too difficult.

2. The second option is to continue the transaction and simply separate out the

---

1. Rollstock packaging machines are machines that package foods such as bologna, bacon, and sausage.

manufacturing and marketing into two separate entities, similar to what we have now, and allow me to totally manage and run the manufacturing facility with Silvio to be in charge of marketing only. This would require me to be the chief executive officer of I2S and have the power to run I2S. Silvio would then be in charge of the marketing company. This option would require Beverly to stay on with I2S to assist in the accounting and personnel functions since Silvio would not be doing those.

3. The third option is to restructure the deal to provide that you and Silvio purchase I2S 100% as well as the building and I would work for I2S at a fixed salary with no interest in I2S.

Due to this change, I am not planning on coming to Chicago on Sunday. If you decide to go ahead and come to the United States next week, I will be happy to meet with you here in Kansas City at your convenience to discuss the resolution of this matter. I have advised Silvio of my decision and have given him a copy of this letter. I have also told Silvio he has no managerial nor decision-making authority with respect to I2S and its business at this time. It is our intention to continue the manufacture and sale of Eagle Packaging Machines and to make them available for sale to customers including your marketing company until this matter is resolved.

I am willing to discuss any or all of the above options to arrive at a solution to this situation. I have lost much sleep over the last four months trying to reconcile myself to how Silvio and I could work together and, unfortunately, have simply concluded that it is not possible. As a result, we need to arrive at a solution to this situation. I regret deeply that it has come to this, but there are times when hard choices must be made and this is one of those.

Thereafter, on November 15, 1994, Weder and Inauen requested that Integrated return the $150,000.00 VC999 had paid toward stock purchase. Inauen and Weder also re-

quested return of the $23,500.00 down payment they had given to Integrated toward the purchase of the Eagle 8000, which was never delivered. Integrated and the Cremers refused to return the money. VC999 gave notice that it had vacated the Integrated building and wanted to terminate the lease on March 31, 1995. This litigation ensued.

VC999, Bernard Inauen, Silvio Weder and Inauen Maschinen, AG filed suit in the Circuit Court of Jackson County against Integrated Industrial Services, Inc. d/b/a I2S Packaging, John Cremer and Beverly Cremer. Plaintiffs' Fourth Amended Petition was in four counts, alleging in Count I breach of contract, in Count II unjust enrichment, in Count III fraud, and in Count IV breach of agreement. Counts I, II, and III sought judgment against the Cremers and Integrated, while Count IV prayed for judgment only against Integrated. The Cremers and Integrated counterclaimed in seven counts, alleging breach of fiduciary duties, breach of contract, fraud, negligence, conversion and head start, conspiracy, and breach of lease. In Count VII, asserting breach of lease, the defendants sought judgment only against VC999. In all other counts, they prayed for judgment against all plaintiffs. At the close of all the evidence both parties moved for directed verdict on all counts of the plaintiffs' petition and of the defendants' counterclaim.

The trial court granted plaintiffs' motions for directed verdict as to Counts I, II, and IV of plaintiffs' petition. Defendants' motion for directed verdict on Count III of plaintiff's petition was sustained. As for defendants' counterclaims, the trial court granted defendant Integrated's motion for directed verdict as to Count VII for breach of lease, and sustained the plaintiffs' motions for directed verdict as to Counts I–VI of the counterclaim. Both parties appeal.[2]

## I. Plaintiffs' Petition

██ We first address the directed verdicts with respect to Counts I, II and IV of plaintiffs' petition. As a general rule, ver-

---

**2.** Neither party appeals the trial court's grant of directed verdicts on Count III of plaintiffs' petition and Count IV of defendants' counterclaim.

dicts may not be directed in favor of the party having the burden of proof. *Coleman v. Jackson County*, 349 Mo. 255, 160 S.W.2d 691, 693 (1942). However, there is an exception to that general rule:

> If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him … This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass.

*Id.* "[A] directed verdict in favor of the party having the burden of proof (usually the plaintiff) is never based upon the plaintiff's evidence." *Brandt v. Pelican*, 856 S.W.2d 658, 664 (Mo. banc 1993). This is so because a directed verdict for plaintiff depends not on what the plaintiff offers into evidence but upon what the defendant admits is true.

### A. Breach of Contract—Eagle 8000

Count IV of plaintiffs' Fourth Amended Petition alleged breach of contract by Integrated with respect to the sale of an Eagle 8000 packaging machine. The trial court directed a verdict in favor of VC999, and entered judgment against Integrated in the sum of $23,500.00 plus prejudgment interest from November 10, 1994 through October 25, 1996 in the sum of $4,319.39. Since VC999 bore the burden of proof, the trial court's directed verdict in favor of VC999 can only be sustained if Integrated admitted the basic facts upon which the claim depended. *Coleman*, 160 S.W.2d at 693.

In order to make a claim for breach of contract, VC999 had to show that (1) a contract existed between it and Integrated and the terms of the agreement; (2) that VC999 tendered performance; (3) that the defendant did not perform; and (4) that Integrated's failure to perform caused damage to VC999. *West Cent. Missouri Regional Lodge No. 50 v. Board of Police Commrs. of Kansas City, Missouri*, 939 S.W.2d 565, 567 (Mo.App. W.D.1997).

John Cremer, Integrated's president, identified plaintiff's exhibit no. 17, Integrated's invoice of September 30, 1994 which reflected the order of one Eagle 8000 packaging machine by VC999 and receipt of a 50% downpayment. Exhibit no. 17 was admitted into evidence without objection. Mr. Cremer admitted that Integrated agreed to sell VC999 the machine for a purchase price of $47,-000.00. He likewise admitted that 50% of the purchase price, $23,500.00, was paid to Integrated by VC999 at the time of the order on September 30, 1994, and that the agreement was that VC999 would pay the balance of the purchase price upon delivery of the machine. Mr. Cremer further testified that VC999 had requested delivery of the machine or refund of the downpayment, but the machine was never delivered to VC999 and that Integrated had never refunded VC999's downpayment.

In other words, Mr. Cremer admitted that Integrated contracted to sell the machine to VC999 for $47,000.00, payable one-half at the time of the order and the balance on delivery of the machine. He further admitted that VC999 tendered performance by paying Integrated the initial downpayment of $23,500.00, and that Integrated failed to perform its part of the agreement in that it never delivered the machine to VC999. Finally, he admitted that Integrated did not refund the downpayment to VC999. Thus, Integrated admitted all the facts necessary to sustain VC999's cause of action. Accordingly, the trial court was correct in granting VC999's motion for directed verdict as to Count IV of Plaintiffs' Fourth Amended Petition.

Integrated argues in its brief that VC999 failed to prove any compensable damages. However, VC999 proved and Integrated admitted that VC999 gave Integrated a $23,-500.00 deposit for a machine which was never delivered. Integrated has yet to return the deposit and has yet to deliver the machine. Section 400.2–711 [3] provides that where a seller fails to deliver goods to a buyer, the buyer may, among other things, recover "so much of the price as has been paid." *Bowen*

---

**3.** All statutory references are to RSMo 1994 un-  less otherwise noted.

*v. Foust,* 925 S.W.2d 211, 215 (Mo.App. S.D. 1996); § 400.2–711(1). Integrated's argument that VC999 did not prove it sustained any damage as a result of Integrated's breach is without merit.

## B. Unjust Enrichment

In Count II of their Fourth Amended Petition, plaintiffs alleged they were entitled to recover to avoid the unjust enrichment of defendants. The trial court entered a combined judgment on Count I (breach of contract) and Count II (unjust enrichment), awarding plaintiffs' a judgment against Integrated in the amount of $59,075.48, plus prejudgment interest of $10,861.76; and against John and Beverly Cremer in the amount of $100,000.00.00, plus prejudgment interest of $18,388.90.

■ The elements of unjust enrichment are: (1) a benefit conferred upon defendant by plaintiff; (2) appreciation of the fact of such benefit by defendant; (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. *Ernst v. Ford Motor Co.,* 813 S.W.2d 910, 918 (Mo.App. W.D.1991). Once again, since the trial court directed a verdict for the plaintiff, the judgment can only be affirmed if the defendants admitted the truth of the basic facts upon which the claim rests.

■ In the case at bar, it is undisputed that, at the time of trial, the parties were not going to go through with the agreement they reached on July 5, 1994. Mr. Cremer admitted during his in-court testimony that plaintiffs paid Integrated $50,000.00 on July 5, 1994 toward the purchase price reflected in the agreement of that date. He further testified that plaintiffs paid him and his wife an additional $100,000.00 on the purchase price on October 10, 1994. Mr. Cremer likewise admitted that no stock or other ownership interest was ever transferred to plaintiffs.

These admissions establish all elements of plaintiffs' claim. Plaintiffs conferred a benefit on defendants by paying them $150,000.00. Defendants certainly appreciated the fact of such benefit because Mr. Cremer admitted the checks were endorsed and cashed and

indeed admitted that the last payment of $100,000.00 was particularly needed because he and his wife were trying to buy a new home. And finally, the retention of the money by defendants would be unjust in that they have given nothing in return. Given that Mr. Cremer admitted to all the facts upon which plaintiffs based their unjust enrichment claim, the trial court was correct in directing a verdict for plaintiffs (and, therefore, denying defendants' motion for directed verdict) on Count II of plaintiffs' petition to the extent of the $50,000.00 paid to Integrated, and the $100,000.00 paid to the Cremers.

■ However, plaintiffs were also seeking recovery in unjust enrichment for advertising monies expended, supposedly on Integrated's behalf, as well as shelving, bins and related items. The trial court included $9,075.48 in the judgment against Integrated for these expenditures, and presumably, some part of the prejudgment interest awarded is attributable to such sum as well. The directed verdict as to these expenditures was error. Integrated presented evidence that the advertising, which represented the vast majority of the expenditures, featured VC999's address and phone number, not Integrated's. Thus, although Integrated admitted the amounts were expended, it did not admit the expenditures were for its benefit. In unjust enrichment, the focus is not on the loss sustained by the plaintiff but on the benefit conferred upon the defendant for which it would be inequitable for him to retain. *Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co.,* 844 S.W.2d 508, 515–16 (Mo.App. E.D.1992). What benefit Integrated received, if any, as a result of the advertising campaign was in dispute. Moreover, Integrated did not admit the truth of all the basic facts essential to plaintiffs claim of unjust enrichment for these amounts. Consequently, the trial court erred in directing a verdict for plaintiffs as to these expenditures.

Accordingly, that portion of the judgment in favor of plaintiffs on Count II of their Fourth Amended Petition against John and Beverly Cremer in the amount of $100,000.00 plus prejudgment interest in the sum of $18,-388.90 is affirmed. Likewise, that portion of

the judgment in favor of plaintiffs on Count II of their Fourth Amended Petition against Integrated for the $50,000.00 paid by plaintiffs to Integrated on July 5, 1994 is also affirmed. However, that portion of said judgment awarding plaintiffs prejudgment interest against Integrated on the $50,000.00 is reversed and the cause is remanded to the trial court with instructions to calculate the amount of prejudgment interest due on said sum, and to enter judgment accordingly. Finally, that portion of the judgment in favor of plaintiffs on Count II of their Fourth Amended Petition against Integrated for $9,075.48 plus prejudgment interest thereon is reversed and the cause is remanded as to that portion of the claim for further proceedings consistent with this opinion.

## C. Breach of Contract—stock sale

As indicated *supra*, the trial court entered a combined judgment on Count I (breach of the stock sale contract) and Count II (unjust enrichment) of plaintiffs' Fourth Amended Petition, awarding plaintiffs' a judgment against Integrated in the amount of $59,075.48, plus prejudgment interest of $10,861.76; and against John and Beverly Cremer in the amount of $100,000.00, plus prejudgment interest of $18,388.90. In Count I, plaintiffs alleged John Cremer breached the parties' July 5, 1994 agreement by informing Inauen and Weder on November 10, 1994, via letter, that Integrated was not going to consummate the deal the parties' agreed to on July 5 th.

■■■■ Generally, in order to make a claim for breach of contract, a party must plead and prove the following: (1) the existence of a contract or agreement and the terms thereof; (2) that the plaintiff performed or tendered performance; (3) that the defendant did not perform; and (4) that such failure to perform caused damage to plaintiff. *West Cent. Missouri Regional Lodge No. 50*, 939 S.W.2d at 567. However, Missouri also recognizes the concept of anticipatory breach by repudiation, which obviates the need to prove plaintiff's performance or tender thereof. *Carmel v. Dieckmann*, 617 S.W.2d 459, 460 (Mo.App. E.D.1981). "A party to a contract repudiates that contract

by manifesting, by words or conduct, a 'positive intention not to perform.'" *Id.* (citing *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862 (Mo.App. E.D. 1978)).

■■■■ Plaintiffs neither alleged nor proved that they had tendered full performance, but rather proceeded on the theory that they were excused from performing because Cremer's November 10 th letter was an anticipatory repudiation of the contract. Therefore, it was incumbent on plaintiffs to show that defendants, by words or conduct, indicated they were not going to transfer any Integrated stock to Inauen or Weder. In their brief, plaintiffs maintain they proved this through the introduction of Cremer's November 10 th letter to Inauen and through the testimony of three of plaintiffs' witnesses. They assert that the testimony they offered "combined with the other facts of the case," were sufficient to warrant a directed verdict. In making this argument, however, plaintiffs ignore the standard of review for verdicts directed in favor of the party bearing the burden of proof.

No matter how overwhelming the plaintiffs' evidence may be, a directed verdict in their favor would have been proper only if the defendants admitted that Mr. Cremer's November 10 th letter was a repudiation of the contract, or if the letter itself constituted such an admission. *Coleman*, 160 S.W.2d at 693; *Brandt v. Pelican*, 856 S.W.2d 658, 664 (Mo. banc 1993). Mr. Cremer clearly stated at trial that he intended the letter to serve as an invitation to explore other options with regard to Weder's responsibilities and involvement with Integrated and not as an indication that the contract was cancelled. Neither Mr. Cremer, nor the other defendants, admitted at trial that they intended to breach the contract with plaintiffs.

Moreover, the letter itself did not constitute such an admission. The basis of a motion for directed verdict can be of a documentary nature if "the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought ..." *Coleman*, 160 S.W.2d at

693. While the authenticity of the letter Cremer delivered to Inauen and Weder on November 10, 1994 was unquestioned, the contents of the letter, nevertheless, fall far short of establishing "beyond all doubt" that defendants did not intend to perform the contract.

The letter expressed Mr. Cremer's dissatisfaction with Silvio Weder's involvement in the non-technical aspects of Integrated. The letter also proposed several options available to the parties to remedy the situation, including choosing to not go forward with the deal. Given that this was only one option Cremer mentioned in the letter, and, according to the letter, "not necessarily the best" option, we cannot find that the November 10th letter was, by itself, proof that defendants intended to breach their contract with plaintiffs. Consequently, the trial court erred in directing a verdict for plaintiffs on Count I of their Fourth Amended Petition.

Integrated lodges several other arguments in support of its theory that a directed verdict was not proper as to this count. However, since we have decided the evidence did not warrant a directed verdict, we need not address Integrated's other arguments on this point.[4]

▮ A party injured by a breach of contract is entitled to the value of the performance of the contract, that is, the injured party is entitled to the benefit of the bargain, that being whatever net gain he or she would have made under the contract. *ArtCraft Cabinet, Inc. v. Watajo, Inc.*, 540 S.W.2d 918, 924 (Mo.App. W.D.1976) (quoting *Boten v. Brecklein*, 452 S.W.2d 86, 93 (Mo.1970)). In their breach of contract claim, plaintiffs presented evidence of damages substantially in excess of the $150,000.00 paid to defendants. Nonetheless, the plaintiffs' damages on the breach of contract claim (Count I) and the unjust enrichment claim (Count II) are coex-

tensive to the extent of the $150,000.00 paid by plaintiffs to defendants. "[Plaintiffs are] entitled to be made whole by one compensatory damage award, but not to the windfall of a double recovery. A double recovery is a species of unjust enrichment and is governed by the same principles of preventive justice." *Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo.App. W.D.1991) (citing *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 94 (Mo.App. E.D.1976)). Therefore, on remand, if plaintiffs are successful on their breach of contract claim, Integrated and the Cremers are entitled to a credit to the extent of the judgment for damages and prejudgment interest entered against them on Count II. Such credit shall not include any recovery plaintiffs may receive on that part of Count II which we have reversed and remanded for further proceedings.[5]

## II. Defendants' Counterclaims

▮ We now turn to the directed verdicts concerning Counts I–VI of defendants' counterclaims. When reviewing a directed verdict against a counterclaimant, we view the evidence and all permissible inferences therefrom in the light most favorable to the counterclaimant and disregard contrary evidence and inferences, and on evidence so viewed, determine whether the counterclaimant made a submissible case on its counterclaims. *Judy v. Arkansas Log Homes*, 923 S.W.2d 409, 416 (Mo.App. W.D.1996). A directed verdict in favor of plaintiffs on defendants' counterclaims is proper only if reasonable minds could not differ as to the proper verdict when the evidence is so viewed. *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 367 (Mo.App. W.D.1997).

### A. Breach of Contract

▮ The trial court granted plaintiffs' motion for directed verdict and denied defen-

---

**4.** Integrated also argues in point two of its brief that it was error for the trial court to deny its motion for directed verdict on Count I of plaintiffs' petition. However, a directed verdict against plaintiffs would have been proper only if plaintiffs failed to make a submissible case for breach of contract. *Judy v. Arkansas Log Homes, Inc.*, 923 S.W.2d 409, 416 (Mo.App. W.D.1996). Plaintiffs clearly made a submissible case.

**5.** In point XII of its brief, defendants take issue with the trial court's calculation of the damage award insofar as it reflects payments for business expenses not related to advertising. Since we have reversed the trial court's decision regarding plaintiffs' breach of contract claim and the award of damages beyond $150,000.00 under the unjust enrichment claim, this point is now moot.

dants' motion for directed verdict on its counterclaim for breach of contract.

Generally, in order to make a claim for breach of contract, a party must plead and prove the following: (1) the existence of a contract or agreement and the terms thereof; (2) that the claimant performed or tendered performance; (3) that the party against whom the breach is alleged did not perform; and (4) that such failure to perform caused damage to claimant. *West Cent. Missouri Regional Lodge No. 50*, 939 S.W.2d at 567.

Defendants' theory at trial was that part of its contract with the plaintiffs included a verbal agreement that Weder would not be involved in the manufacturing or personnel sides of Integrated. They maintained that Weder's involvement with personnel and other aspects of Integrated, not related to marketing, amounted to breach of contract.

Viewing the evidence in the light most favorable to defendants, we will assume, *arguendo*, that there was a verbal agreement as asserted by defendants. However, even assuming such an agreement, the defendants failed to show that Weder did not abide by the agreement or that his conduct constituted a breach of the agreement. John Cremer admitted at trial that everything Weder did at Integrated, he did with Cremer's permission or Cremer simply failed to object. Cremer testified that had he objected to anything Weder wanted to do, Cremer's decision would have been controlling. Finally, once Cremer decided he could not work with Weder, he relieved Weder of his job duties at Integrated. This is hardly evidence that plaintiffs' breached an agreement relating to the duties to be performed by Weder.

Defendants also allege plaintiffs breached the agreement because they requested return of their money after receiving Mr. Cremer's November 10th letter. In that letter, Mr. Cremer gave Mr. Inauen the option of calling off the deal and working something out with regard to the steps the parties had already taken together. Obviously, by requesting return of their money, plaintiffs were simply accepting one of the offers Mr. Cremer made in the letter. Reasonable minds could not differ in finding that Mr. Weder's and Mr. Inauen's decision to request the return of their money was not in breach of any contract.

Defendants also maintain in their brief that plaintiffs failed to provide Integrated with sufficient monies to fund the research and development involved in bringing a new product to the market—the IMAG Eagle 8000. While defendants did offer evidence that the parties had agreed that plaintiffs would provide development funding, they did not offer any evidence revealing when the money was to be paid. Neither Integrated nor the Cremers transferred any Integrated stock to plaintiffs. The deal had not closed as of November 10, 1994. Integrated offered no evidence that plaintiffs were obligated to expend any development monies *prior* to the closing of the stock purchase. Moreover, there was no evidence that defendants requested expenditure of such funds and that plaintiffs refused. Therefore, plaintiffs failure to do so cannot be said to be in breach of the parties' agreement. Accordingly, defendants failed to make a submissible case on their breach of contract claim, and it was proper for the trial court to direct a verdict in favor of plaintiffs and against defendants on this count.

## B. Fraud

Defendants next argue the trial court erred in granting a directed verdict in favor of plaintiffs on the fraud counterclaim. Defendants asserted at trial that Weder and Inauen committed fraud by representing to the Cremers that (1) Weder would only have control over the non-technical administrative aspects of Integrated, (2) VC999 would provide operating capital to Integrated if it would turn down revenue generating orders from regular customers and concentrate its efforts on bringing the Eagle 8000 to market, and (3) John Cremer would have full and complete authority over the manufacturing side of Integrated.

The elements of actionable fraud are: (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent that the representation be acted upon; (6) the hear-

er's ignorance of its falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on it; and (9) injury. *Martin v. McNeill,* 957 S.W.2d 360, 363 (Mo.App. W.D.1997). The trial court's grant of a directed verdict in favor of plaintiffs on defendants' fraud claim was proper for many of the same reasons outlined in defendants' breach of contract claim. In the context of fraud, defendants failed to make a submissible case because they failed to offer any evidence that the representations plaintiffs made were false.

First, assuming a jury were to find plaintiffs promised Weder would only be involved in the non-technical aspects of Integrated and that John Cremer would have full authority over the manufacturing side of the business, defendants still failed to show these representations were false when made and that Inauen and Weder made them knowing they were false. All the evidence presented by both defendants and plaintiffs indicated John Cremer still had full authority over Integrated. If Weder was meddling in the manufacturing side of the business, it was with Cremer's knowledge and acquiescence. When Cremer decided he could no longer work with Weder, he exercised his authority to relieve Weder of his responsibilities at Integrated. Not only did John Cremer still have full authority over the manufacturing portion of the business, it is clear from the evidence that he still had full authority over the entire Integrated operation.

Defendants also contend plaintiffs committed fraud by representing that they would provide Integrated with the operating capital needed to bring the Eagle 8000 to market. However, they fail to show that these statements were false. Defendants presented no evidence that plaintiffs had agreed to provide the needed capital before the closing of the stock transaction. They cannot say the representations plaintiffs made were false when plaintiffs were never given the opportunity to go forward with their promises. We agree with plaintiffs that it would be nonsensical for defendants to expect plaintiffs to flush thousands of dollars into a company before the stock transfer actually took place. Reasonable minds could not differ in finding that

defendants failed to prove Inauen and Weder made a false representation to the Cremers when they indicated they would provide Integrated with development capital. The trial court did not err in directing a verdict for plaintiffs on this count of defendants' counterclaim.

## C. Conversion/Head Start

■ Count V of defendants' counterclaim alleged plaintiffs were guilty of conversion and head start. Defendants contend that since the plaintiffs had access to Integrated's plans for a new rollstock packaging machine and since the plaintiffs brought a new rollstock packaging machine to market within months after the deal with Integrated falling through, then plaintiffs must be guilty of conversion/head start. However, defendants failed to produce any evidence of wrongdoing on the part of plaintiffs.

In order to receive compensation for head start liability, defendants had to show that the plaintiffs misused or misappropriated Integrated's property, such as documents, drawings, blueprints, or materials. *Walter E. Zemitzsch, Inc. v. Harrison,* 712 S.W.2d 418, 422 (Mo.App. E.D.1986). The measure of damages is the profits Integrated lost as a result of competition from plaintiffs, for the period of time plaintiffs would not otherwise have been in production, absent the misappropriation or misuse of Integrated's property. *Id.*

Defendants failed to produce any evidence that anyone from VC999 or Maschinen misappropriated or misused Integrated's materials. The only evidence defendants presented was that VC999 had a machine on the market very similar to the Eagle 8000 within a short time after the parties' deal fell through on November 15, 1994. Defendants did not offer any evidence that any of the plaintiffs took anything from Integrated. They likewise failed to offer any evidence of how Integrated had been damaged by the introduction of the plaintiffs' new machine on the market. Essentially, defendants failed to produce any evidence that would support a claim for conversion or head start. As such, the trial court did not err in directing a verdict on this count for plaintiffs.

## D. Breach of Fiduciary Duty

■ Defendants next claim the trial court erred in directing a verdict for plaintiffs on their breach of fiduciary duty claim. They contend they made a submissible case for breach of fiduciary duty and that the issue should have gone to the jury. We disagree.

■ To sustain a cause of action for breach of fiduciary duty, defendants first had to establish that a fiduciary relationship existed between them and the plaintiffs. Defendants surmise that since the judge, while addressing the jury, referred to the parties' business enterprise as a "joint venture," then the parties should be considered joint venturers. Joint venturers owe one another a fiduciary duty. *Birdsong v. Bydalek,* 953 S.W.2d 103, 121 (Mo.App. S.D.1997). However, the essential elements of a joint venture are: "(1) an express or implied agreement among members; (2) a common purpose to be carried out by the members of the group; (3) a community of pecuniary interest in the common purpose; and (4) an equal voice, giving an equal right of control in the direction of the enterprise." *Eads v. Kinstler Agency, Inc.,* 929 S.W.2d 289, 292 (Mo.App. W.D. 1996). All the evidence presented at trial indicated John Cremer, from July 5 through November 10, clearly had control over Integrated. While Weder may have been successful in pursuing some of the changes he wanted to see made at Integrated, it is clear form the record that Weder's voice was not "equal" to Mr. Cremer's. Since the parties did not share control equally from July 5 through November 10, they cannot be said to have been joint venturers during that time. Absent the possibility of a joint venturer relationship, defendants failed to prove their relationship with the plaintiffs was anything more than people who had entered into a contract. "It has long been the rule in our state that the existence of a business relationship does not give rise to a fiduciary relationship, nor a presumption of such a relationship." *Chmieleski v. City Prods. Corp.,* 660 S.W.2d 275, 294 (Mo.App. W.D. 1983).

■ Moreover, even if defendants had established that a fiduciary relationship existed between and among the parties, they still failed to show how any of the plaintiffs breached that duty. Defendants argue in their brief that the plaintiffs were guilty of self-dealing, but we find nothing in the record, nor do defendants alert us to any place in the record, which would support such a contention. Similarly, defendants' claim that plaintiffs breached such a duty by failing to provide sufficient capital to fund the development of the Eagle 8000 is without merit. As noted *supra,* defendants failed to show that plaintiffs had any duty to provide funds to Integrated prior to the stock transfer. And finally, defendants' assertion that plaintiffs breached a fiduciary duty by misappropriating "sensitive and confidential" information which they later used to develop their own rollstock packaging machine is without merit. As discussed earlier, there is no evidence in the record that any plaintiff misappropriated any materials from Integrated. Moreover, John Cremer admitted that nothing about the Eagle 8000 was secret or patented, so none of the information about the machine was "confidential." In light of the foregoing, the trial court did not err in directing a verdict in favor of plaintiffs on this count of defendants' counterclaim.

## E. Civil Conspiracy

■ Defendants next contend the trial court erred in directing a verdict in favor of plaintiffs on their civil conspiracy claim. This argument is wholly devoid of merit.

■ To establish a civil conspiracy claim, there must be evidence that (1) two or more persons (2) with an unlawful objective, (3) after a meeting of the minds (4) committed at least one act in furtherance of the conspiracy, (5) thereby causing damage to the [counter-claimant]. *Gibson v. Brewer,* 952 S.W.2d 239, 245 (Mo. banc 1997). Defendants contend the alleged fraudulent representations made by Inauen and Weder constituted sufficient evidence of a civil conspiracy to warrant sending this issue to the jury.

As previously discussed, the evidence does not support a finding that any plaintiff made false representations to any defendant. Point denied.

## F. Breach of Lease

■ Finally, the trial court directed a verdict in favor of Integrated and against

VC999 for breach of lease pursuant to Count VII of the counterclaim. The court entered judgment in favor of Integrated in the amount of $22,800.00.

VC999 signed a lease in February 1994, agreeing to rent space in the Integrated warehouse from March 1, 1994 through February 28, 1997 at a rental rate of $975 per month. The lease provided, *inter alia,* that upon default, Integrated had the option of reentering and taking possession of the premises. The lease also provided, however, that Integrated would make reasonable efforts to relet the premises on behalf of VC999.

As noted earlier, a directed verdict in favor of the party bearing the burden of proof is only proper if the opponent admits the truth of the essential facts upon which the proponent's claim rests. *Coleman,* 160 S.W.2d at 693. VC999 notified Integrated of its intentions to terminate the lease on March 31, 1995. Weder admitted VC999 vacated the premises before the expiration of the lease. However, VC999 did not admit the truth of all essential facts necessary to establish the amount of damages to which Integrated was entitled. VC999 presented evidence at trial that Integrated reentered the space and used it for storage three to six months after VC999 vacated. VC999 also presented evidence to the effect that Integrated did not attempt to relet the premises at any time after VC999 left. Beverly Cremer admitted that Integrated began using a portion of the space VC999 had been leasing for storage about three to six months after VC999 vacated the premises. Mrs. Cremer also stated Integrated had not made any efforts to relet the premises after VC999 vacated.

Whether Integrated failed to mitigate damages by not attempting to relet the premises was a question for the jury. Therefore, we must reverse and remand the trial court's grant of directed verdict in favor of defendants for a jury determination of damages.

### Conclusion

The judgment of the trial court is affirmed as to Count IV of plaintiffs' petition and Counts I–VI of defendants' counterclaim. The trial court's judgment on Count I of plaintiffs' petition and on Count VII of defendants' counterclaim is reversed and remanded for further proceedings consistent with this opinion.

That portion of the judgment in favor of plaintiffs on Count II of their petition against John and Beverly Cremer in the amount of $100,000.00 plus prejudgment interest in the sum of $18,388.90 is affirmed. Likewise, that portion of the judgment in favor of plaintiffs on Count II of their petition against Integrated for the $50,000.00 paid by plaintiffs to Integrated on July 5, 1994 is also affirmed. However, that portion of said judgment awarding plaintiffs prejudgment interest against Integrated on the $50,000.00 is reversed and the cause is remanded to the trial court with instructions to calculate the amount of prejudgment due on said sum, and to enter judgment accordingly. Finally, that portion of the judgment in favor of plaintiffs on Count II of their petition against Integrated for $9,075.48 plus prejudgment interest thereon is reversed and the cause is remanded as to that portion of the claim for further proceedings consistent with this opinion.

All concur.