**WARREN DAVIS PROPERTIES V, L.L.C., Plaintiff–Respondent,**

v.

**UNITED FIRE AND CASUALTY COMPANY, Defendant– Appellant.**

No. 22458.

Missouri Court of Appeals, Southern District, Division One.

Sept. 30, 1999.

Motion for Rehearing and Transfer Denied Oct. 22, 1999.

Application for Transfer Denied Nov. 23, 1999.

Robert S. Cockerham , Bart B. Zuckerman, Brown & James, St. Louis, for appellant.

John E. Price, Carnahan, Evans, Cantwell & Brown, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

This appeal involves a suit by an insured against an insurance company for breach of contract and vexatious refusal to pay. Following a six-day trial, a jury returned verdicts in favor of Defendant United Fire and Casualty Company. Thereon, Plaintiff Warren Davis Properties V, L.L.C., moved for a new trial, which the trial court granted. Defendant appeals from that order as well as from the trial court's denial of its motions for directed verdict at trial. We affirm.

## FACTS

In August 1995, Warren Davis purchased the "old Heers Store," [1] the nearby "No–Nonsense building," and three parking lots, all in downtown Springfield, Missouri, from Golde's Department Stores, Inc., (Golde's) for a total purchase price of $415,000. On the same day Davis purchased these properties, he sold them to Warren Davis Properties V, L.L.C., (Plaintiff) for the same purchase price. Davis held a majority interest in and was the sole acting manager of Plaintiff.

Some time before consummating these transactions, Davis (on behalf of Plaintiff) consulted Ollis & Company, a local insurance agency, to obtain insurance on the Heers building. Through the local insurance agent, Plaintiff applied for $5.5 million coverage on the Heers building with United Fire and Casualty Company (Defendant). Plaintiff's insurance agent used a computer program to calculate the amount of coverage for which Plaintiff ultimately applied. Although Plaintiff's insurance agent intended to apply for replacement cost coverage, the application did not indicate whether Plaintiff was applying for replacement cost or actual cash value coverage. Davis's local agent forwarded the policy application to Defendant. Defendant responded by offering to extend the coverage amount requested but only on an actual cash value basis. Davis accepted the actual cash value coverage. On November 21, 1995, Plaintiff asked Defendant to increase Plaintiff's policy limits on the Heers building to $6.8 million. Defendant agreed to extend the additional coverage amount on an actual cash value basis.

On November 22, 1995, maintenance personnel locked the Heers building and departed for the Thanksgiving holiday. When maintenance workers returned to work on November 27, 1995, they discovered a sprinkler releasing water on the third floor. The water had run from the third floor down to the ground floor, saturating the floors, walls, and ceilings of all floors in

---

1. In this opinion, we refer to the "old Heers     Store" as the Heers building.

between. As a result, Plaintiff filed a claim for the loss with Defendant.

On January 14, 1996, a security guard discovered another sprinkler releasing water in a bathroom on the second floor. The damage arising out of this incident was much less extensive than the first sprinkler incident. Much of the water ran down a drain in the bathroom floor. Even so, some of the water did run out of the bathroom, soaking carpets on the second floor and damaging ceiling tiles on the first floor ceiling. Soon thereafter, Plaintiff filed another claim for loss with Defendant. Defendant consolidated Plaintiff's claims for the two sprinkler incidents.

Under the insurance contract, Plaintiff was required to provide to Defendant a "proof of loss" containing an assessment of the damage caused by the sprinkler incidents. Plaintiff's first proof of loss contained a generalized statement of the damage but did not contain an estimate of the loss in actual cash value terms. Defendant requested a second proof of loss from Plaintiff and specifically requested that the second proof of loss contain a "statement of actual cash value and loss and damage, ... and amount of loss claimed." Defendant extended the contractual deadline for Plaintiff's proof of loss in order to allow Plaintiff time to submit the second proof of loss.

For the second proof of loss, Plaintiff hired a team of five people, including an engineer, an architect, and an elevator/escalator specialist, to examine the building and estimate the costs to repair the damage. For purposes of their assessment, the team members estimated the costs to replace or repair the damaged property and did not estimate the actual cash value of the damaged property. Based on the team's evaluation and estimates, Plaintiff submitted its second proof of loss claiming actual cash value damages of $1,190,870.80.

Defendant conducted its own investigation of the sprinkler incidents, during which it requested various types of information and documents from both Plaintiff

and Davis. Davis refused to provide some of the requested information. Ultimately, Defendant denied Plaintiff's claims in a letter dated May 17, 1996. The letter set out several reasons for the denial, only two of which are relevant to this appeal: (1) failure to satisfy the vacancy condition in the insurance contract, and (2) concealment or misrepresentation of material facts during Defendant's investigation in violation of the contract.

After the denial of its claims, Plaintiff sued Defendant, claiming, among other things, that Defendant breached the written insurance contract and that Defendant's denial amounted to a vexatious refusal to pay. Following trial, the jury returned verdicts in favor of Defendant. Thereon, Plaintiff moved for a new trial, which the trial court granted. Defendant appeals from that order and from the trial court's denial of its motions for directed verdict. We recount additional facts where relevant to our discussion.

## DISCUSSION AND DECISION

Defendant's first point relied on states: "THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S] MOTION[S] TO AMEND ITS [ANSWER] TO CONFORM TO THE EVIDENCE BECAUSE THE ISSUES OF VACANCY AND MISREPRESENTATION AND CONCEALMENT WERE TRIED BY IMPLIED CONSENT IN THAT EVIDENCE RELATING EXCLUSIVELY TO BOTH ISSUES WAS PRESENTED THROUGHOUT THE TRIAL WITHOUT OBJECTION."

█ This point appears to raise a purely hypothetical issue in that the jury returned a verdict in favor of Defendant. Consequently, it seems Defendant is asking us to render an advisory opinion, which we will not do. *See Workman v. Vader,* 854 S.W.2d 560, 564[6] (Mo.App. 1993). However, Defendant argues in Point II that the trial court erred in granting Plaintiff's motion for new trial because,

*inter alia,* Defendant established the affirmative defenses of vacancy and material misrepresentation as a matter of law. We, therefore, deem it appropriate to resolve Defendant's Point I, i.e., decide whether the alleged affirmative defenses were or should have been part of the case, before we address Point II.

Defendant's motions to amend arose out of the following circumstances. When trial commenced, Defendant's answer included the following under the heading "AFFIRMATIVE DEFENSES":

> "[Plaintiff] is not entitled to any coverage or recovery under said contract of insurance because [Plaintiff] breached the conditions of the contract of insurance, including the following:
>
> " 'LOSS CONDITIONS
>
> . . . .
>
> " '6. Vacancy
>
> " 'If the building where loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage, we will:
>
> " 'a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
> " '(1) Vandalism;
>
> " '(2) Sprinkler leakage, unless you have protected the system against freezing;
>
> " '(3) Building glass breakage;
>
> " '(4) Water damage;
>
> " '(5) Theft; or
>
> " '(6) Attempted theft.
>
> " 'A building is vacant when it does not contain enough business personal property to conduct customary operations.
>
> " 'Buildings under construction are not considered vacant.
>
> . . . .

> " 'COMMERCIAL PROPERTY CONDITIONS
>
> " 'A. CONCEALMENT, MISREPRESENTATION OR FRAUD
>
> " 'This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> " '1. This Coverage Part;
>
> " '2. The Covered Property;
>
> " '3. Your interest in the Covered Property; or
>
> " '4. A claim under this Coverage Part.' "

Defendant's answer did not allege any other facts regarding these contractual provisions or Plaintiff's compliance or noncompliance therewith.

Beginning on the second day of the six-day trial, the trial court *sua sponte* questioned whether Defendant had properly pleaded its affirmative defenses. In particular, the trial court voiced concern that Defendant's answer did not contain sufficient allegations of fact to demonstrate that Defendant was entitled to its affirmative defenses of vacancy and concealment or misrepresentation under Rule 55.08.[2] The trial court entertained arguments of both parties on the issue, and Defendant twice moved to amend its pleadings to conform to the evidence pursuant to Rule 55.33(b). The trial court denied both motions and refused to submit Defendant's proposed affirmative defense instructions to the jury. In this point, Defendant challenges as erroneous the trial court's denial of its motions to amend its answer.

A number of considerations attend our review of this point. Under Rule 55.33(b),[3]

---

**2.** All rule references are to Missouri Supreme Court Rules (1998) unless otherwise noted. The trial court specifically referred the parties to Rule 55.08 and *ITT Commercial Finance*

*Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371 (Mo.banc 1993).

**3.** Rule 55.33(b) provides:

issues not raised in the pleadings may be tried by express or implied consent of the parties. *Kackley v. Burtrum,* 947 S.W.2d 461, 465 (Mo.App.1997). It is "quite usual" for parties to amend their pleadings under Rule 55.33(b), even during trial. *Midwest Materials Co. v. Village Dev. Co.,* 806 S.W.2d 477, 488 (Mo.App.1991). "A court should be liberal in permitting such amendments...." *St. Louis County v. Taggert,* 809 S.W.2d 476, 478[5] (Mo.App. 1991). Nevertheless, the decision whether to allow a moving party to amend its pleadings in such circumstances is committed to the sound discretion of the trial court, and appellate courts will not disturb the trial court's decision "absent an obvious abuse of that discretion." *Id.*

■ Failure to make a timely and specific objection to evidence on the ground that it is beyond the scope of the parties' pleadings constitutes consent for determination of issues raised thereby. *Kackley,* 947 S.W.2d at 465[7]. Issues tried by implied consent shall be treated as though they were raised in the pleadings even if the pleadings have not been formally amended to conform to the evidence. *Id.* at 465[8]. However, "evidence received without objection will give rise to an amendment of the pleadings by implied consent only when it bears solely on the proposed new issue and is not relevant to some other issue already in the case." *Id.*

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that is is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court

at 465[9] n. 3 (citing *Lester v. Sayles,* 850 S.W.2d 858, 868–869[13] (Mo.banc 1993)).

■ Defendant argues that two of its affirmative defenses—specifically, the vacancy condition and the concealment, misrepresentation, or fraud condition—were tried by implied consent because evidence supporting both defenses was presented at trial, Plaintiff did not object to this evidence, and the evidence was not relevant to any other issue at trial. *See* Rule 55.33(b); *Lester,* 850 S.W.2d at 868–869[13]; *Leonards v. U–Jin Enterprises, Inc.,* 811 S.W.2d 480, 485[8] (Mo.App.1991). Plaintiff, on the other hand, argues that evidence of vacancy and concealment or misrepresentation was relevant to other issues at trial—in particular, its vexatious refusal claim, brought pursuant to § 375.420.[4] As a result, Plaintiff argues it did not impliedly consent to try Defendant's purported affirmative defenses. We agree with Plaintiff.

■ Defendant's denial letter set out several bases for the denial of Plaintiff's claims. Among these reasons were the two mentioned above: (1) Plaintiff's failure to satisfy the vacancy condition in the contract, and (2) Plaintiff's concealment and/or misrepresentation of material facts. In order for Plaintiff to prove that Defendant's denial of the claims rose to the level of a vexatious refusal, Plaintiff had to show that Defendant "refused to pay [Plaintiff's] loss without reasonable cause or excuse."

that the admission of such evidence would cause prejudice in maintaining the action or defense upon the merits."

4. References to § 375.420 are to RSMo 1994. In pertinent part, § 375.420 provides:

"In any action against any insurance company to recover the amount of any loss under a policy of ... insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the ... jury may, in addition to the amount thereof and interest, allow the plaintiff damages [as specified in this provision] ... and a reasonable attorney's fee...."

§ 375.420. Thus, it was logical—if not necessary—for Plaintiff to attempt to demonstrate that Defendant's stated bases for denial of the claims were not "reasonable cause or excuse." Because Defendant's stated reasons for denial included vacancy and concealment or misrepresentation, evidence regarding these reasons was relevant to the issue of whether Defendant's refusal to pay Plaintiff's claims was vexatious. As a result, this evidence was not relevant solely to Defendant's affirmative defenses and it cannot be said that Plaintiff impliedly consented to try them. Consequently, we hold the trial court did not abuse its discretion in denying Defendant's motions to amend its answer. Accordingly, Point I is denied.[5]

■ In its second point, Defendant contends, *inter alia,* that the trial court erred in (1) denying its motions for directed verdict at the close of Plaintiff's evidence and at the close of all the evidence, and (2) granting Plaintiff's motion for a new trial. Defendant's point avers three reasons the trial court's disposition of these motions was erroneous:

"A. Plaintiff failed to produce sufficient evidence it was damaged by the two sprinkler incidents in that plaintiff produced no evidence of the actual cash value or fair market value of the Heers building before and after the two sprinkler incidents;

"B. Defendant established its affirmative defense of vacancy as a matter of law ...; and

"C. Defendant established its affirmative defense of material misrepresentation and concealment as a matter of law...."

At the outset, we note that reasons "B" and "C" are nullified by our disposition of Point I. Thus, we need consider only reason "A." Moreover, we view Defendant's attack on the trial court's denial of its motions for directed verdict as moot in light of the fact that the jury returned a verdict for Defendant. The jury verdict gave Defendant exactly what it sought by its motions for directed verdict. This leaves for our review only Defendant's claim that the trial court erred in granting Plaintiff's motion for new trial.

In granting Plaintiff a new trial, the trial court stated, among other things, that it believed "the verdict was for the wrong party and against the greater weight of the evidence." Rule 78.02 allows the trial court to grant one new trial on the basis that the verdict is against the weight of the evidence. "The trial court's order granting a new trial is presumptively correct[ ] and will be disturbed only in the event of a manifest abuse of discretion." *Carpenter v. Chrysler Corp.,* 853 S.W.2d 346, 359[19] (Mo.App.1993). "Such manifest abuse of discretion occurs when the benefitting party fails to make a submissible case." *Gregg v. Erb,* 834 S.W.2d 253, 254 (Mo.App.1992). "In order to make a submissible case, it is incumbent on the plaintiff to present substantial evidence supporting each element of his claim." *McGraw v. Andes,* 978 S.W.2d 794, 802[7] (Mo.App.1998). To determine whether Plaintiff made a submissible case, this court views the evidence and all reasonable inferences drawn therefrom in a light most favorable to the Plaintiff. *Gregg,* 834

---

**5.** In its argument under Point I, Defendant also contends that its amended answer contained sufficient facts to show it was entitled to its affirmative defenses and that, nonetheless, the pleading was sufficient to place Plaintiff on notice that Defendant intended to raise these defenses. These arguments and allegations of error go beyond the single error alleged in Defendant's point relied on. The questions for decision on appeal are those stated in the points relied on; a question not there presented will be considered abandoned. *Flud v. Flud,* 926 S.W.2d 201, 206[6] (Mo.App.1996); *Greene County Concerned Citizens v. Board of Zoning Adjustment of Greene County,* 873 S.W.2d 246, 255[3] (Mo.App. 1994). "Issues to which an appellant alludes only in the argument portion of the brief are not presented for review." *Flud,* 926 S.W.2d at 206[7]; *Greene County Concerned Citizens,* 873 S.W.2d at 255[4]. Accordingly, we do not consider these contentions.

S.W.2d at 254. In so doing, we take Plaintiff's evidence as true unless entirely unreasonable or contrary to physical facts, we reject all inferences unfavorable to Plaintiff, and we disregard Defendant's evidence except as it aids the Plaintiff's case. *Id.* Our supreme court has explained the policy behind this standard of review as follows:

" '[T]he policy is founded upon the fundamental inappropriateness of appellate courts' endeavoring to weigh evidence. We have only the cold transcript before us which reveals very few of the numerous factors to be considered in weighing evidence.... [W]eighing evidence is not simply a matter of quantitative analysis, but is primarily a qualitative analysis. While we might well determine which litigant produced the larger quantity of evidence, our position is far inferior to that of the trial court in analyzing the quality of the evidence. Consequently we must rely upon the trial court's proper exercise of the discretion entrusted to it in such matters.' "

*Gentry v. Douglas,* 744 S.W.2d 788, 789 (Mo.banc 1988) (quoting *Clark v. Quality Dairy Co.,* 400 S.W.2d 78, 82 (Mo.banc 1966)).

■ The only element of Plaintiff's case Defendant attacks is Plaintiff's showing of damages. Specifically, Defendant argues that "[P]laintiff did not produce any evidence that the two sprinkler incidents caused a diminution in the actual cash value of the Heers building." Both parties acknowledge that the phrase "actual cash value" is not defined in the insurance contract, but the parties agree that the phrase has been treated by case law as meaning "fair market value." *DeWitt v. American Family Mut. Ins. Co.,* 667 S.W.2d 700, 708 n. 6 (Mo.banc 1984); *Pannell v. Missouri Insurance Guaranty Ass'n,* 595 S.W.2d 339, 355 (Mo.App.1980). "Fair market value," in turn, "refers to the price the property would bring if sold by a willing seller to a willing buyer who is under no compulsion to buy." *Sharaga v. Auto Owners*

*Mut. Ins. Co.,* 831 S.W.2d 248, 253[12] (Mo.App.1992). Our review of the record, conducted under the standards set out above, leads us to the conclusion that Plaintiff did present substantial evidence and did, therefore, make a submissible case on the issue of whether it had sustained an actual cash value loss, i.e., a diminution in the fair market value of the Heers building, as a result of the sprinkler incidents.

Warren Davis was the first witness called by Plaintiff. Davis testified that despite the $415,000 price paid to purchase the five properties from Golde's, he believed the Heers building, alone, was actually worth around $2.6 million at the time of closing and that the building's value did not change from the time of closing until the first sprinkler incident. He also testified that when he offered the Heers building for sale after the sprinkler incidents, he asked for only $1.3 million because of the water damage. He based his valuations, in part at least, on his experience purchasing other buildings and real estate in downtown Springfield and his familiarity with the real estate market in the area.

■ Plaintiff points out that Missouri case law has recognized that a managing officer of a corporation is competent to testify as to the value of property held by the corporation he or she manages. *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.,* 589 S.W.2d 260, 269[13] (Mo.banc 1979). This is true even though the managing officer is not an expert so long as "he is in fact familiar with the value of the realty." *Southern Mo. Dist. Council of the Assemblies of God v. Hendricks,* 807 S.W.2d 141, 148[13] (Mo.App. 1991). "The basis for the admission of such testimony is the corporate officer's unique familiarity with the value of the property." *Id.* This would seem to be particularly true where, as here, the corporate officer has knowledge of and experience with other properties in the same general area as the property about which he or she is testifying. We see no reason

why this rule should not extend to a manager of a limited liability company, provided he or she "is in fact familiar with the value of the realty." *Hendricks*, 807 S.W.2d at 148[13]. We believe the evidence adequately demonstrates Davis's familiarity "with the value of the realty" here. Thus, we conclude that his testimony, alone, is substantial evidence that Plaintiff sustained an actual cash value loss. Accordingly, we hold that Plaintiff made a submissible case on the issue of damages.

This conclusion is bolstered by additional evidence presented by Plaintiff, particularly the testimony of its expert witnesses. Three experts testified as to the extent of the damage caused by the sprinkler incidents, while a fourth, Kirk Heyle, a commercial real estate broker and consultant, gave his opinion of the diminution in the fair market value as a result of the sprinkler incidents. Heyle testified he had been a real estate consultant and counselor in Springfield for twenty-four years and had been trained in methodologies of real estate appraisal. He described three accepted methods of real estate appraisal, i.e., the income approach, the cost approach, and the comparable sales approach, but explained that he utilized only the income approach in appraising the Heers building's value both before and after the sprinkler incidents.

In gauging the building's fair market value after the sprinkler incidents, Heyle utilized the damage assessments made by Plaintiff's other experts, including those hired to help prepare Plaintiff's second proof of loss. Heyle explained that he considered these damage estimates be-

cause he believed a potential buyer would take such costs of repair into account when making an offer on the property. *See Sharaga*, 831 S.W.2d at 253. Heyle took the total of the other expert's damage estimates, approximately $1.2 million, and amortized that amount "over a standard period of time" as an additional expense of operating the Heers building. This reduced the net income of the building during the amortization period. Finally, Heyle opined that, under the income method of appraisal, the sprinkler incidents caused a diminution in the fair market value of the Heers building, and, therefore, an actual cash value loss, of approximately $1.5 million.

Further, we note that even Defendant's appraisal expert, William Webb, testified that the sprinkler incidents caused at least *some* diminution in the fair market value of the Heers building. Webb opined that the Heers building's fair market value had been reduced $10,000 as a result of the sprinkler incidents. The fact that Webb's estimate of Plaintiff's loss was dramatically lower than that of Plaintiff's witnesses is inconsequential insofar as determining whether the evidence was sufficient to make a submissible case as to whether Plaintiff suffered an actual cash value loss.

Giving Plaintiff the benefit of all reasonable inferences, we conclude that this record . contains substantial evidence that Plaintiff did sustain an actual cash value loss. Accordingly, we hold that Plaintiff did make a submissible case and that the trial court's decision to grant a new trial on weight of the evidence grounds was not a manifest abuse of discretion. Point II is denied.[6]

---

**6.** Defendant's argument under Point II is replete with attacks on Plaintiff's evidence, including characterizations of certain of Plaintiff's evidence as "self[-]serving," "self-contradictory," "irrelevant, immaterial, unsupported, and speculative." Defendant concentrates its attacks on the competence of Plaintiff's expert witnesses' testimony. There are two primary problems with Defendant's assault on Plaintiff's evidence.

First, Defendant's attacks on the evidence ignore the standards of review applicable to this point as set forth in the early part of our discussion of Point II. Under those standards, we have no choice but to disregard much of the evidence Defendant argues in support of its position on appeal. Second, such attacks on the evidence call on us to judge the credibility of witnesses

The trial court's grant of Plaintiff's motion for a new trial is affirmed.

CROW, P.J., PARRISH, J., concur.

and weigh the evidence. This we cannot do. *See Gentry,* 744 S.W.2d at 789.