**WARREN DAVIS PROPERTIES V, L.L.C., Plaintiff–Respondent,**

v.

**UNITED FIRE & CASUALTY CO., Defendant–Appellant.**

No. 24898.

Missouri Court of Appeals,
Southern District,
Division Two.

June 27, 2003.

Petition for Rehearing and Transfer
Denied July 21, 2003.

Application for Transfer Denied
Aug. 26, 2003.

518

 

Robert W. Cockerham, T. Michael Ward, Brown & James, P.C., St. Louis, for appellant.

John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for respondent.

JAMES K. PREWITT, Presiding Judge.

This appeal involves a suit by an insured, Warren Davis Properties V, L.L.C. ("WDP"), against an insurance company, United Fire & Casualty Company ("United Fire"), for breach of contract and vexatious refusal to pay a claim related to damage in a building owned by WDP ("the Heers Building") allegedly caused by two sprinkler incidents. Following jury trial, judgment was entered in favor of WDP on both claims. United Fire filed motions for new trial and judgment notwithstanding the verdict, both of which were denied.

Presented as four points relied on, United Fire contends that the trial court erred in denying the above motions because WDP failed to make a submissible case that the damage was covered under the policy; in granting WDP's motion for directed verdict on United Fire's affirmative defense of material misrepresentation and concealment in the application; in denying United Fire's motion for new trial because the trial court committed prejudicial and reversible error and an abuse of discretion by overruling United Fire's objections to WDP's closing and rebuttal arguments.

This is the second trial and appeal. In the first trial, a jury returned verdicts in favor of United Fire, after which the trial court granted WDP's motion for new trial. *Warren Davis Prop. V, L.L.C. v. United Fire & Cas. Co.*, 4 S.W.3d 167, 168 (Mo. App.1999) (*Warren Davis I*). On appeal,

we affirmed and held that WDP made a submissible case on the issue of damages, because sufficient evidence was presented to show WDP had sustained an actual cash loss or diminution of fair market value of the Heers Building. *Id.* at 174. We found that the only element of WDP's case that United Fire attacked on appeal was WDP's showing of damages. *Id.* at 173.

Also in that first appeal, United Fire contended that the trial court erred in denying its motions to amend its answer to conform to the evidence because the issues of vacancy and misrepresentation and concealment were tried by implied consent due to WDP's failure to object to the evidence and because the evidence was not relevant to any other issue at trial. *Id.* at 169, 171. Prior to United Fire's motions to amend, the trial court had voiced concern that United Fire's answer did not contain sufficient allegations to demonstrate it was entitled to affirmative defenses of vacancy and concealment or misrepresentation. *Id.* at 170.

We disagreed with United Fire's contention and found that since United Fire's stated reasons for denial of WDP's claim included vacancy and concealment or misrepresentation, evidence regarding those reasons was relevant to WDP's claim of vexatious refusal to pay. *Id.* at 172. Thus, such evidence was not relevant solely to United Fire's affirmative defenses and therefore, it could not be said that WDP had impliedly consented to try the issues. *Id.*

A detailed statement of the facts may be found in *Warren Davis I* and we will recount additional facts where necessary and relevant to our discussion of United Fire's points in this second appeal.

United Fire's first point in this appeal addresses the vacancy issue. United Fire contends that the trial court erred in denying its motions for judgment notwithstanding the verdict and new trial because WDP failed to make a submissible case that the damage was covered under the policy. Specifically, United Fire argues that the Heers Building stood vacant for more than 60 consecutive days before the claimed damage occurred, and thus was vacant according to the plain language of the policy. Within this point United Fire also argues that WDP failed to present substantial evidence warranting a jury instruction that United Fire had waived the policy exclusion based on vacancy because United Fire did not have knowledge regarding the vacancy status of the Heers Building.

The second jury trial was held October 22–26, 2001. The jury found in favor of WDP on the breach of contract and vexatious refusal to pay claims and, other than modifying the verdict to reflect the parties' stipulation that the court rather than the jury compute the interest, in its judgment filed December 3, 2001, the trial court accepted the verdict and found that it was supported by substantial evidence. The total judgment was $2,187,166, with $1,200,000 on the insurance policy, $582,016 in interest, $120,150 as the statutory penalty for vexatious refusal to pay, and $285,000 for attorney's fees.

On December 31, 2001, United Fire filed a motion for new trial and a motion for judgment notwithstanding the verdict. The trial court overruled the post-trial motions on April 1, 2002.

■■■ We review the trial court's denial of a motion for new trial for abuse of discretion. *First State Bank of St. Charles, Missouri v. Frankel,* 86 S.W.3d 161, 172 (Mo.App.2002). Our review is performed in the light most favorable to the verdict and we do not consider matters such as the weight of the evidence, the credibility of witnesses, or the resolution of conflicting testimony. *McGraw v. Andes,*

978 S.W.2d 794, 805 (Mo.App.1998). The jury's verdict will not be disturbed unless there is a complete absence of probative facts to support it. *First State Bank,* 86 S.W.3d at 172.

We are limited to a determination of whether substantial evidence exists to support the jury's verdict. *Thornton v. Gray Auto. Parts Co.,* 62 S.W.3d 575, 580 (Mo.App.2001). To reverse, the verdict must be "so shocking and grossly inadequate that it could have only resulted from passion and prejudice on the part of the jury." *Id.* (quoting *Wright v. Long,* 954 S.W.2d 470, 472 (Mo.App.1997)).

Our standard of review for the trial court's denial of United Fire's motion for judgment notwithstanding the verdict is whether WDP made a submissible case. *Benoit v. Missouri Highway and Transp. Comm'n,* 33 S.W.3d 663, 667 (Mo.App. 2000). To make a submissible case, each element of a plaintiff's claim must be supported by substantial evidence. *Id.* We determine whether WDP made a submissible case by considering the evidence in the light most favorable to the jury's verdict, giving WDP the benefit of all reasonable inferences, and disregarding all unfavorable evidence and inferences. *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 319 (Mo. App.2000).[1]

To make a submissible case for breach of contract, the party alleging breach, WDP, must establish: (1) the existence of a valid contract; (2) the rights and obligations of the respective parties; (3) a breach; and (4) damages. *White v. Pruiett,* 39 S.W.3d 857, 861–62 (Mo.App. 2001). Here, the only element of WDP's case that United Fire attacks is WDP's showing of a breach.

To make a submissible case on vexatious refusal to pay, WDP must show that United Fire's refusal to pay the claim was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person before trial. *Bickerton, Inc. v. American States Ins. Co.,* 898 S.W.2d 595, 602 (Mo.App.1995).

United Fire contends that WDP failed to make a submissible case that the damage was covered under the policy because the policy contained an exclusionary provision, which stated:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage, [United Fire] will:
>
> a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
> (1) Vandalism;
>
> (2) Sprinkler leakage, unless [WDP has] protected the system against freezing;
>
> (3) Building glass breakage;
>
> (4) Water damage;
>
> (5) Theft; or
>
> (6) Attempted theft.
>
> A building is vacant when it does not contain enough business personal property to conduct customary operations.

---

1. We mention here the doctrine of the "law of the case," which generally precludes any reconsideration of matters determined on the first appeal. *Laclede Inv. Corp. v. Kaiser,* 596 S.W.2d 36, 40 (Mo.App.1980). Under the application of that doctrine, if "the evidence on a second appeal is substantially the same as that on the first appeal, all matters, questions, points, or issues adjudicated on the prior appeal are the law of the case and on a subsequent appeal will not be adjudicated unless the first opinion was based on a mistaken fact or resulted in a manifest injustice." *Green v. Stanfill,* 641 S.W.2d 490, 492 (Mo.App.1982). Whether the law of the case doctrine is applicable to this case is not an issue presented here and will not be discussed further.

Buildings under construction are not considered vacant.

In Missouri, exclusionary clauses are strictly construed against the insurer, and if the clause is ambiguous, it will be construed favorably to the insured. *American States Ins. Co. v. Broeckelman,* 957 S.W.2d 461, 465 (Mo.App.1997). Where a term is defined in the policy, we are bound by that definition. *Shaffner v. Farmers Mut. Fire Ins. Co. of St. Clair County,* 859 S.W.2d 902, 907 (Mo.App. 1993).

A vacant building has been defined as a building that is empty, without inanimate objects, and deprived of its contents. *Id.* at 905. A building is considered vacant when there is nothing in it or it is abandoned and not used for any purpose. *Id.* The policy here, though, includes its own definition of vacant: "A building is vacant when it does not contain enough business personal property to conduct customary operations." The policy further stipulates that "[b]uildings under construction are not considered vacant." The policy does not provide a definition of the term "construction" or the phrase "under construction."

United Fire argues that given the definition of vacant in the policy, which we are obligated to accept, as well as a reasonable definition of construction, WDP failed to establish there was coverage under the policy for the water damage caused by the sprinkler incidents. Therefore, according to United Fire, WDP failed to make a submissible case for breach of contract, because WDP did not show that a breach occurred.

Before proceeding with our analysis, we want to comment on the issue of whether the Heers Building was under construction. Testimony at trial was that crews were inside the building cleaning and removing items such as discarded hangers, billing machines, computer monitors, metal racks, and trash. There was also testimony that within 60 days of the first sprinkler incident, WDP employees built a platform and replaced the stairs leading to the elevator penthouse of the building.

United Fire argues that none of those activities constituted construction either under a dictionary definition or as provided in case law. One of the dictionary definitions provided by United Fire in its brief is that construction is "The act of building by combining or arranging parts or elements; the thing so built." BLACK'S LAW DICTIONARY 308 (7th ed.1999). United Fire also cites to cases from other jurisdictions in which courts have held that the term construction does not include repairs, maintenance, reconstruction, or renovation, but instead refers to the building of something new and not the repair or improvement of something already existing. *See Myers v. Merrimack Mut. Fire Ins. Co.,* 788 F.2d 468, 472 (7th Cir.1986); *Travelers Indem. Co. v. Wilkes County,* 102 Ga.App. 362, 116 S.E.2d 314, 317 (1960); *Commonwealth v. Brown,* 391 Mass. 157, 460 N.E.2d 606, 609 (1984).

We decline to follow the cases cited by United Fire. Construing the reasonable definition of construction in favor of the insured, we find that activities encompassing the renovation of a building are construction.

However, rather than addressing whether the Heers Building was vacant according to the definition within the policy, or discussing further whether the building was under construction, we will proceed by considering United Fire's argument regarding Instruction No. 8. Doing so also will provide an answer to the question of whether WDP made a submissible case that the damage was covered under the policy.

United Fire asserts that WDP failed to present substantial evidence warranting the submission of Instruction No. 8, which read as follows:

> Your finding must be for [WDP] on the defense of vacancy as submitted in paragraph second of Instruction No. 7 if you believe defendant [United Fire] knew the [Heers] Building was vacant when it issued the insurance policy, and knew facts sufficient to put a reasonable person on notice that the vacancy was or was likely to continue beyond 60 days thereafter.

■■■■ The submission of an instruction will be upheld if supported by substantial evidence. *Hawkes v. Norfolk & Western Ry. Co.*, 876 S.W.2d 705, 707 (Mo. App.1994). Substantial evidence is evidence that, if true, is probative and from which the jury can reasonably decide the case. *Choate v. Natvig*, 952 S.W.2d 730, 734 (Mo.App.1997). When reviewing an instruction, we view the evidence and inferences in the light most favorable to the instruction and disregard any contrary evidence. *Id.*

■■■■ An insurer is bound by the information acquired by its agent in taking an application, and is assumed to have at least constructive notice of what the agent knows. *Bledsoe v. Farm Bureau Mut. Ins. Co.*, 341 S.W.2d 626, 629 (Mo.App. 1960). Where the agent knows that the insured building is not currently occupied, or is not likely to be occupied within the prescribed time, and issues a policy containing a vacancy provision, the insurer waives the insured's compliance with the provision. *Id.*

■■■ An agent having knowledge that a building was vacant at the time the policy was issued may not necessarily be grounds for waiver of a vacancy provision; however, knowledge of an existing vacancy coupled with facts sufficient to put a reasonable person on notice that the vacancy will, or is likely to, continue beyond the prescribed time, does provide grounds. *Id.* at 632. If the agent has actual knowledge not only of the existing vacancy but also of the continued likelihood of vacancy for the prescribed period, that may also serve as grounds for waiver. *Id.*

■■■ The insurance application for the Heers Building was submitted to United Fire by Ollis and Company Insurors ("Ollis & Co."). United Fire has an agency contract with Ollis & Co. under which Ollis & Co. is an authorized agent to solicit insurance policies, which includes the authority to obtain information from a proposed insured and transmit it to United Fire. Documents filed with the State of Missouri showed that Ronald Ollis, Richard Ollis (to whom we will refer by their first names to lessen confusion), and Nancy Walker, all of whom worked for Ollis & Co. and either worked on the policy for the Heers Building or became involved following the dispute over the claim for the sprinkler incidents, had been appointed by United Fire as its agents in Missouri.

As detailed in *Warren Davis I*, sometime after arranging to purchase the Heers Building in August 1995, Davis applied for $5.5 million in coverage for the Heers Building. 4 S.W.3d at 168. Although both Davis and Richard, an independent insurance agent at Ollis & Co., intended for the policy to be for replacement cost, such was not indicated on the application and United Fire offered to extend the coverage amount requested, but only on a cash value basis, which Davis accepted. *Id.* The policy coverage was later increased to $6.8 million, based on Davis' request. *Id.*

The first sprinkler incident occurred over a Thanksgiving holiday between November 22 and 27, 1995, and the second

incident was discovered on January 14, 1996. *Id.* at 168–69. United Fire combined the claims for the two incidents. *Id.* at 169.

John Anderson, the director of antifraud and a vice president at United Fire, testified that during the application process, prior to United Fire issuing the policy for the Heers Builing, Richard advised United Fire that the Heers Building was "vacant, going to be remodeled and [the remodeling] would be started sometime later." Richard testified that he was of the understanding, based on information provided by Davis, that the Heers Building "would be cleaned out and then over the next several months some construction would begin on the remodeling of the building." Davis provided no schedule for the remodeling, but Richard was aware that there were no tenants in the building and that no remodeling would begin until tenants were procured. Although there were occasions when United Fire contacted agents at Ollis & Co. to ask questions or obtain further information prior to issuing a policy, United Fire asked no questions about the status of the Heers Building or any other matter regarding this policy application.

Nancy Walker, a client service agent at Ollis Co., informed United Fire through documentation that the Heers Building was to be renovated and have occupancy following interior renovations, which would not begin until the building was cleaned. None of the information Walker transmitted to United Fire suggested that any of the work would begin within 60 days.

After the policy had been issued, Margaret Magruder, a loss control inspector for United Fire, inspected WDP's properties covered under the policy, including the Heers Building. On the day Magruder completed her survey or inspection, she was told by a gentleman who escorted her through WDP's properties that the Heers Building had just been purchased and that "nothing had been done to it." Davis had also given her this information when she called to make an appointment to conduct the inspection. She only took a picture of the outside of the Heers Building and did not gain entrance into it because she determined that since nothing had been done to the building, there was nothing to survey.

In addition to the testimony above, there was evidence presented that United Fire paid claims both before and after the sprinkler incidents. These included claims made in October 1995 and April 1996, both for glass breakage, which was also listed within the vacancy exclusionary provision. With respect to the claim for the sprinkler incidents, Davis received a letter from an attorney on behalf of United Fire in January 1996 that stated, "at this time it did not appear that [United Fire] would raise the vacancy issue with regard to this loss."

Based on the standards of review outlined above for the submission of Instruction No. 8 and the denial of the motions for judgment notwithstanding the verdict and new trial, WDP presented substantial evidence warranting a jury instruction that United Fire had waived the policy exclusion based on vacancy; therefore, WDP presented a submissible case that the damage was covered under the policy and we will not disturb the jury's verdict as there was not a complete absence of probative facts to support it. *First State Bank,* 86 S.W.3d at 172. Point I is denied.

■ In its second point, United Fire contends that the trial court erred in granting WDP's motion for a directed verdict on United Fire's affirmative defense of material misrepresentation and concealment in the application. United Fire argues that it presented substantial

evidence, when viewed in the light most favorable to United Fire, for the jury to conclude that WDP had concealed the fair market value of the Heers Building while procuring the insurance, since WDP had paid no more than $100,000 for the property, yet sought and received $7 million in coverage from United Fire, $5.5 million of which was specific to the Heers Building.

At the close of evidence, the trial court granted WDP's motion for directed verdict on United Fire's counterclaim and affirmative defense of alleged fraud in the procurement of the insurance policy. United Fire carried the burden of proof on both the counterclaim and the affirmative defense. *See Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo.App.1999) (counterclaim); *Nichols v. Preferred Risk Group,* 44 S.W.3d 886, 897 (Mo.App.2001) (affirmative defense).

When reviewing a directed verdict against a counterclaimant, we view the evidence and all permissive inferences therefrom in the light most favorable to the counterclaimant and disregard contrary evidence and inferences. *Inauen Packaging Equip. Corp. v. Integrated Indus. Services, Inc.,* 970 S.W.2d 360, 368 (Mo.App. 1998). Using the evidence viewed under the standard above, we determine whether the counterclaimant made a submissible case on its counterclaim. *Id.* The same standard would apply in terms of an affirmative defense, as the defendant (United Fire here) has the burden of proof in both an affirmative defense and a counterclaim.

The granting of a directed verdict will not be reversed if it was correct for any reason. *Giles v. American Family Life Ins. Co.,* 987 S.W.2d 490, 493 (Mo. App.1999). However, a directed verdict is a drastic action and should only be granted if reasonable minds could not differ as to the proper verdict in the case. *McNear v. Rhoades,* 992 S.W.2d 877, 884 (Mo.App. 1999).

To make a submissible case on fraud, a claimant must show: (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of the truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Constance v. B.B.C. Dev. Co.,* 25 S.W.3d 571, 580 (Mo.App. 2000). Failure to establish any element is fatal to recovery. *Id.*

Therefore, if one or more of the elements of the cause of action are not supported by substantial evidence, a directed verdict is proper. *McNear,* 992 S.W.2d at 884. A case should not be submitted to the jury unless each and every fact essential for liability is predicated on legal and substantial evidence. *Constance,* 25 S.W.3d at 576. "Liability cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case". *Bond v. California Comp. & Fire Co.,* 963 S.W.2d 692, 696(Mo.App.1998). The question of whether the evidence is substantial is one of law for the court. *Constance,* 25 S.W.3d at 576–77.

WDP is correct that we are restricted to arguments and allegations of error presented within the point itself. *Warren Davis I,* 4 S.W.3d at 172 n. 5. In this point, United Fire limits its allegation of error to that associated with its affirmative defense of material misrepresentation and concealment while procuring the insurance and argues that WDP concealed the fair market value of the Heers Building, having purchased the building for, at most, $100,000, yet seeking and receiving coverage in the amount of $7 million, of which $5.5 million was for the Heers Building.

We question, however, whether Davis, on behalf of WDP, made a false material representation concerning the fair market value of the Heers Building. The evidence at trial from Davis, Richard, and Anderson, (the United Fire vice president and its director of anti-fraud) was that the application was a standard insurance industry form that does not include questions relating to the purchase price of property. As established in *Warren Davis I*, Richard used a computer program to calculate the amount of insurance coverage for which Davis ultimately applied ($7 million in total for WDP properties, $5.5 million for the Heers Building) and the intention of both Richard and Davis was that such coverage would be for the replacement cost of the Heers Building, even though United Fire ultimately only agreed to provided coverage on an actual cash value basis. 4 S.W.3d at 168.

The computer program used by Richard, the Marshall Swift costimator, does not ask questions relating to the purchase price of the building. Nor did Richard ask such questions of Davis. When using the costimator, Richard rarely asks questions regarding purchase price because the object of the costimator is to calculate the replacement cost of the building, which may or may not be related to the actual purchase price.

As indicated previously in this opinion, United Fire never asked any questions about the information provided on the application prior to issuing the policy. Although Richard intended for the application to request a replacement cost policy, that area was left blank on the application and United Fire subsequently only offered to extend coverage on an actual cash value basis. Typically, according to Richard, for an actual cash value policy, the insurer depreciates the building off the replacement cost; however, United Fire never inquired about or contacted Richard or Davis about depreciation prior to issuing the policy.

Anderson, who wrote the letter in May 1996 denying the claim, indicated that at the time he wrote the letter, he had "questions of fraud." He testified in a deposition that he had not yet decided, at the time of the writing of that denial letter, whether the case was indeed a fraud case. He also testified that neither he nor anyone else at United Fire "ever intimated or even suggested that [Ollis & Co.] was in collusion with [WDP];" he assumed that the $7 million amount for coverage was a number that Davis had provided to Richard, rather than a number calculated by Richard using the costimator.

In the one contact Anderson had with Ollis & Co., which was with and initiated by Ronald, the president of the agency and supervisor of its claims department, Anderson never asked how the amount of coverage was derived. Anderson informed Ronald that United Fire did not intend to have any further contact with Ollis & Co. regarding the claim and that the claim was being handled not by United Fire's claims adjustors, but by United Fire's attorneys in St. Louis. Ronald testified that this was not the normal manner in which an insurer would handle claims with Ollis & Co., that typically the agency would be "kept in the loop."

Prior to purchasing the Heers Building, Davis, working with Richard at Ollis & Co., did obtain an insurance policy on the building, which was not insurance on the building itself, but rather a policy intended to allow Davis to recoup any costs associated with purchasing the building. There is no dispute that those costs were around $100,000, and much less than the $5.5 million replacement cost associated with the Heers Building calculated for the later policy.

The evidence presented at trial, even when viewed in the light most favorable to United Fire, does not show that Davis, on behalf of WDP, made a false material representation concerning the fair market value of the Heers Building. Therefore, one of the elements necessary for United Fire to make a submissible case on fraud was not supported by substantial evidence and the directed verdict was proper. *McNear*, 992 S.W.2d at 884. Point II is denied.

■ United Fire contends in its third point that the trial court erred in denying its motion for new trial by committing prejudicial and reversible error and abusing its discretion in overruling United Fire's objection to WDP's closing argument and request for mistrial. According to United Fire, WDP's argument was an improper and prejudicial invitation to the jurors to apply the "golden rule" by placing themselves in WDP's position.

The allegedly offensive passage is as follows:

[WDP]: So I would ask you to please consider this evidence, consider what an insurance company ought to do, consider what you would want your insurance company to do, whether you would want them to work with you—

[United Fire]: I'm going to object. Golden rule argument there. I'd ask for a mistrial.

[Trial Court]: That's overruled.

■ We review a trial court's ruling during closing argument for an abuse of discretion. *Criswell v. Short*, 70 S.W.3d 592, 594 (Mo.App.2002). Trial counsel is afforded wide latitude in closing argument in arguing facts and drawing inferences from the evidence. *Id.*

■ A mistrial is a drastic remedy that should only be granted where the incident is so grievous that the prejudicial effect can be removed in no other way.

*Henderson v. Fields*, 68 S.W.3d 455, 473 (Mo.App.2001). Assessing the prejudicial effect of statements made during closing argument rests in the discretion of the trial court and only if we find that the trial court's decision was clearly against reason and resulted in prejudice to United Fire will we find an abuse of discretion. *Criswell*, 70 S.W.3d at 594. The trial court is in a superior position to assess any pervasive effect of an improper argument. *Henderson*, 68 S.W.3d at 473.

■ A "golden rule" argument, which we do not distinguish from "improper personalization," occurs when counsel personalizes the case to the jurors by asking them to place themselves in the position of a party to the action. *Id.; see also Fowler v. Park Corp.*, 673 S.W.2d 749, 757 (Mo. banc 1984).

■ Here, United Fire did not ask for a limiting or curative instruction, deciding instead to only ask for a mistrial. In analysis of similar circumstances in criminal trials, we have noted that a limiting instruction for the jury to disregard the improper argument or evidence is sufficient to avoid prejudice and cure any error. *State v. Carter*, 71 S.W.3d 267, 271 (Mo.App.2002); *see also State v. Weekley*, 92 S.W.3d 327, 330 (Mo.App.2002). We have further stated in these cases that the fact that the defendant seeks no relief other than a mistrial cannot aid him or her. *Carter*, 71 S.W.3d at 271. "Where a defendant does not ask for an instruction, we consider the failure to grant a mistrial an abuse of discretion only if the comments were so prejudicial that their effect could not have been removed by direction to the jury." *Weekley*, 92 S.W.3d at 330. We see no reason not to apply the above rule to comparable situations in civil cases, and adopt it here.

Assuming without deciding that the statements here were improper as "golden rule" arguments or "improper personalization," they were not flagrant nor were they emphasized in any way. We fail to see how they were so inflammatory, improper, or prejudicial that the trial court abused its discretion by overruling United Fire's request for a mistrial and denying its later motion for new trial. Point III is denied.

■■■ In its final point, United Fire argues that the trial court erred in denying its motion for new trial by committing prejudicial and reversible error and abusing its discretion in overruling United Fire's objection to statements made during WDP's rebuttal portion of their closing argument. Specifically, United Fire contends that WDP was allowed to argue to the jury its right to recover damages under the vexatious refusal to pay statute, § 375.420, RSMo Supp.1995, within its final argument without having first raised the issue in its initial closing argument.

The exchange in context was as follows:

[WDP]: This has had an unreasonable affect [sic] on Mr. Davis and on the Heers [B]uilding and on this city. He hasn't been able to get financing. It's been six years now. No bank will loan him money on a building that's in a lawsuit.

It's time to correct that situation. It's time to pay this claim. And it's time to also send a message to the insurance company. And the [c]ourt will give you another instruction that if you find that if you find that the conduct of the insurance company—

[United Fire]: Your Honor, I just reserve my objection. This wasn't raised in his—first part of his opening.

[Trial Court]: Noted. Overruled.

[WDP]: I'm sorry, Your Honor, time?

[Trial Court]: You may proceed. I'll give you another few seconds.

[WDP]: Instruction No. 11 tells you if you think their conduct was unreasonable, then you need to penalize them and you need to award the $280,000 that it's cost Mr. Davis, that he had to mortgage his home to pursue this for six years to bring—

[United Fire]: Your Honor, I object to that. There was no evidence of that in this case.

[Trial Court]: That is overruled. The jury will remember what was in the evidence.

■■■ Similar to the standard of review stated for Point III, the trial court is accorded broad discretion in ruling on the propriety of closing arguments and will suffer reversal only for an abuse of discretion. *Simpson v. Johnson's Amoco Food Shop, Inc.*, 36 S.W.3d 775, 777 (Mo.App. 2001).

■■■ A plaintiff's final closing argument, often called rebuttal, is typically limited to rebuttal argument. *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 17 (Mo.banc 1994). Plaintiff's counsel may cover any subject matter discussed in the defendant's closing argument, but also may cover any topic discussed in plaintiff's initial closing argument. *Id.* By confining plaintiff's rebuttal portion of closing argument in this manner, the defendant is assured of the opportunity to answer or address the matters raised by plaintiff during closing. *Id.*

■■■ A similar but more specific rule, which is not subject to the discretion of the trial court, states that plaintiff's counsel may not ask for specific amounts of damages for the first time in the rebuttal portion of closing argument when defendant has made no argument as to that amount. *Id.* at 19–20.

We consider United Fire's second objection first. That objection followed WDP's mention of the $280,000 in damages for claim of vexatious refusal to pay. However, United Fire's objection was not specifically made on the ground that WDP improperly injected the amount into the case without United Fire being provided the opportunity to argue against it. Thus, United Fire's second objection was not properly preserved under *Tune.* 883 S.W.2d at 19.

Further, when considering either United Fire's second objection or its first objection in which United Fire asked to "reserve" its objection and specifically argued that WDP failed to raise the issue of the insurance company's conduct, we require that an objecting party make the basis of an objection reasonably apparent in order to provide the opponent an opportunity to correct the error and the trial court an opportunity to correctly rule on the objection. *Soutee v. Director of Revenue*, 977 S.W.2d 313, 315 (Mo.App.1998). In addition, we require that an objection be timely made, which necessitates that it be made at the earliest opportunity after the objectionable character of the evidence becomes apparent to allow the trial judge to correct that which is later claimed to be in error. *Id.* at 315–16.

Here, we agree with WDP that if its statements made immediately prior to United Fire's objection that the issue had not been raised in the initial part of WDP's closing argument were improper, the objectionable character of its statements were present much earlier in the rebuttal portion of its closing argument. Earlier in this portion of its closing argument, WDP discussed the United Fire's allegedly unreasonable behavior in the following manner:

> .... I guess the one thing that I want to show you and remind you of which maybe explains some of this is Defendant's Exhibit 44S—or, I'm sorry Plaintiff's Exhibit 44S [part of claims file].... This is the facts, the facts that four days after the loss United Fire sent Lynn Ward [a United Fire adjustor] here in Springfield. And it says, "Lynn, look at the loss condition vacancy. Be careful about that." And then it asks him a number of questions. You can read them on there. And they're all geared towards trying to find a way to avoid what they already knew was a really big claim.
>
> Now, in this claim file—you can look through if you want to take the time, but I'll represent to you that if you look through it, you're going to find that within three days after this loss they were told by Roy Carter, their independent adjustor, that was over a half million dollar loss, and they were told by Lynn Ward, the guy they sent the note to, that it was over a $350,000 loss. And from that moment on, this insurance company has done what it could to try to find a way out of paying this claim.
>
> Now, what did they do in comparison to what an insurance company reasonably and normally does? First thing they did was they took their local adjustor off of the case and hired their attorneys. And even ... their own expert[ ] says, you know, you don't do that. He never did that at CNA Insurance Company. What else did they do? They took the claims supervisor in Cedar Rapids off the case and Mr. Anderson, the anti-fraud man, took over from the get-go. Well, what does that tell you about where they were going and what they were trying to do?
>
> Now, I submit to you, ladies and gentlemen, that, you know, Mr. Davis has been through three different sworn examinations for this company, over nine hours. Well, you know, I would hate to

be put through that. I would imagine that if you put me through nine hours of examination, you could find three or four things that you could say I didn't say the right thing, that I didn't get it right. That does not equate to dishonesty. That equates to putting a team of lawyers on somebody and pushing and pushing and picking and picking until you can find those few little things that'll give you an excuse not to pay this loss.

. . . .

This insurance company has acted unreasonably. They have relied upon lawyers and opinion witnesses, experts that they've hired and paid to come in here. They won't put their own people's testimony on the stand from the company other than Mr. Anderson who sat at the top. They won't put the claims adjustor, the loss control surveyor on. They want to rely on opinion evidence from people who can get on the stand and say, "We were reasonable. We did this right."

Under the vexatious refusal to pay statute, § 375.420, RSMo Supp.1995, it states that "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages . . . ."

United Fire has not properly preserved the issue raised in Point IV for review. Having not properly preserved the point, we may only review for plain error. Rule 84.13(c); *see also Koedding v. Kirkwood Contractors, Inc.*, 851 S.W.2d 122, 126 (Mo. App.1993). We find no error, plain or otherwise. Point IV is denied.

The judgment is affirmed.

PARRISH, J., and SHRUM, J., concur.