[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13517
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cv-00296-SCB-JSS

HELEN JARVIS,

Plaintiff-Appellant,

versus

GEOVERA SPECIALTY INSURANCE COMPANY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 3, 2018)

Before MARCUS, JULIE CARNES and HULL, Circuit Judges.

PER CURIAM:

Helen Jarvis appeals the district court's grant of summary judgment in favor

of GeoVera Specialty Insurance Company, Inc. ("GeoVera") on Jarvis's breach of

contract action.  GeoVera refused to provide coverage after a fire destroyed a home

owned by Jarvis, and insured by GeoVera.    According to GeoVera, a vacancy-exclusion clause in the insurance policy precluded coverage on Jarvis's claim.   Jarvis argued that an exception to the vacancy-exclusion clause for a "dwelling being constructed" allowed her to recover on her claim.   The district court held that the phrase "dwelling being constructed" was unambiguous and did not apply to home renovations, repairs, or refurbishments.   On appeal, Jarvis argues that: (1) the phrase "dwelling being constructed" is ambiguous and should have been construed in favor of coverage; and (2) factual disputes remain as to whether the house was "vacant" and whether it was "being constructed."   After careful review, we affirm.

The relevant, undisputed facts are these.  Jarvis owned the insured property and rented it to the same tenant for several years.  After the tenant moved out on June 30, 2016, Jarvis and her children began fixing up the house.  Specifically, they replaced and repaired drywall in several places, repaired a small roof leak, and replaced plumbing by running new piping through the attic and re-running the piping in the house.  These repairs cost about $5,000 or $6,000.  A handyman and a few other workers assisted in the repairs, but no contractors or architects were hired to work on the house.  None of the repairs changed the structure of the house. At that time, the house contained major appliances and had running utilities, garbage service, and lawn maintenance, but the house was not furnished, and no

one lived or slept there.  At some point after the tenant moved out but before the fire, someone broke into the house by breaking the glass on the kitchen door. Jarvis temporarily repaired the door by placing wood over the break.  Jarvis later learned that, before the fire, a neighbor had seen teenagers on the property and had run them off.  On October 12, 2016, over three months after the tenant moved out, the house was damaged when someone illegally and intentionally set fire to it.

Jarvis's insurance policy did not cover "[v]andalism and malicious mischief, if the dwelling has been 'vacant' or 'unoccupied' for more than 30 consecutive days immediately before the loss."  The policy clarified that "[a] dwelling being constructed is not considered 'vacant' or 'unoccupied.'"  While the policy defined "unoccupied" and "vacant," it did not define a "dwelling being constructed."

GeoVera denied Jarvis coverage on her fire damage claim based on the vacancy exclusion.  Jarvis then sued GeoVera for breach of contract in state court, and GeoVera removed the case to federal district court.  Jarvis argued that the exception to the vacancy exclusion for a "dwelling being constructed" applied because the house was undergoing repairs and renovations at the time of the fire. GeoVera moved for summary judgment, which the district court granted, concluding that the unambiguous exception to the vacancy exclusion did not apply to renovations, repairs, or refurbishments.  Jarvis filed this timely appeal.

We review a district court's grant of summary judgment de novo. Huff v. DeKalb Cty., Ga., 516 F.3d 1273, 1277 (11th Cir. 2008). We also review de novo the interpretation of disputed provisions in an insurance contract, which is a question of law. James River Ins. Co. v. Ground Down Eng'g, Inc. 540 F.3d 1270, 1274 (11th Cir. 2008). At the summary-judgment stage, we view the material presented and draw all factual inferences in the light most favorable to the nonmoving party. Animal Legal Def. Fund v. U.S. Dep't of Agric., 789 F.3d 1206, 1213–14 (11th Cir. 2015). Summary judgment is appropriate if the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This is a diversity case arising in Florida, and the parties do not dispute that Florida substantive law applies. Under Florida law, courts must construe insurance policies according to their plain meaning and resolve any ambiguities in favor of the insured. Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co., 133 So. 3d 494, 497 (Fla. 2014). If a provision in an insurance policy contract "is susceptible to more than one reasonable interpretation, one providing coverage and [] another limiting coverage, the insurance policy is considered ambiguous." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). "However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one

manner." Lambert v. Berkley S. Condo. Ass'n, 680 So. 2d 588, 590 (Fla. 4th DCA 1996). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." Fla. Stat. § 627.419(1).

We are unpersuaded by Jarvis's argument that the phrase "dwelling being constructed" is an ambiguity that should be construed in her favor, and we affirm the district court's conclusion that GeoVera owed no coverage, albeit on slightly different grounds. See Allen v. USAA Cas. Ins. Co., 790 F.3d 1274, 1278 (11th Cir. 2015) ("This Court may affirm for any reason supported by the record, even if not relied upon by the district court."). Although the policy did not define a "dwelling being constructed," we nevertheless consider its plain meaning. Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1229 (11th Cir. 2005) ("Florida law requires us to consider the plain meaning of the terms in an insurance contract, even if a term is not defined in the policy"). The dictionary definition of the verb "construct" is "to form, make, or create by combining parts or elements." Construct, Webster's Third New International Dictionary (2002), http://unabridged.merriam-webster.com/unabridged/construct (last visited Apr. 6, 2018). Black's Law Dictionary defines the similar term "construction" as "[t]he act of building by combining or arranging parts or elements." Construction, Black's Law Dictionary (10th ed. 2014). Thus, the policy contained an exception to the vacancy exclusion for a dwelling being formed, made, created, or built.

Florida courts have not determined whether the phrase "dwelling being constructed" can apply to work performed on an existing structure. We agree with the district court that Sunrise Sports Cars, Inc. v. Britamco Underwriters, Inc., 782 So. 2d 1009 (Fla. App. 2001), did not address this issue. Although the insured had plans to transform an existing vacant restaurant into a car showroom, the Florida appellate court did not decide whether that transformation would render the restaurant "under construction" for purposes of that policy's vacancy exclusion because the renovation and conversion had not yet started when the property was vandalized. Id. at 1010. Because no work was being done on the premises, the court did not decide whether any work to an existing structure would render the property "under construction." Id.

Some courts have held that similar phrases do not include repairs, renovations, or comparable work on existing buildings. See Myers v. Merrimack Mut. Fire Ins. Co., 788 F.2d 468, 472 (7th Cir. 1986); Jerry v. Ky. Cent. Ins. Co., 836 S.W.2d 812, 814–816 (Tex. App. 1992); Travelers Indem. Co. v. Wilkes Cty., 116 S.E.2d 314, 317 (Ga. App. 1960). Other courts have concluded that these phrases include renovations to an existing structure. See TRB Invs., Inc. v. Fireman's Fund Ins. Co., 145 P.3d 472, 477 (Ca. 2006); Warren Davis Prop. V, L.L.C. v. United Fire & Cas. Co., 111 S.W.3d 515, 522 (Mo. App. 2003); Brouillette v. Phoenix Assurance Co., 340 So. 2d 667, 670–71 (La. App. 1976).

6

However, we need not decide whether an existing structure can be considered a "dwelling being constructed."  Even assuming it is possible to construct a building without erecting an entirely new structure, that is not what happened here.  Among other things, courts have consistently recognized that "construction" must consist of "substantial continuing activities."  See Vennemann v. Badger Mut. Ins. Co., 334 F.3d 772, 774 (8th Cir. 2003) (quoting Will Realty Corp. v. Transp. Ins. Co., 492 N.E.2d 372, 373 (Mass. App. 1986)); TRB Invs., 145 P.3d at 477.  The activities undertaken here were not substantial.  Jarvis estimated that she spent about $5,000 or $6,000 on improvements to the house.  The projects -- replacement of dry wall and pipes and a minor roof repair -- were relatively minor and, by Jarvis's admission in her deposition testimony, did not change the structure of the house.  Rather, Jarvis and her family refurbished a finished house.  It cannot be said that the insured house was formed, made, created, or built when this work was performed.  Accordingly, even assuming the vacancy-exclusion exception is susceptible to two reasonable interpretations -- one excluding work to an existing structure and one including it -- neither interpretation provides Jarvis coverage.  Garcia, 969 So. 2d at 291.

Jarvis argues that the district court's interpretation of "being constructed" conflicted with a provision in the policy providing that the "insured location" was the "residence premises," which was defined as a "dwelling used principally as a

7

private residence and regularly rented or held for rental to others." She asserts that this provision clarified that coverage was only given to structures that already existed on the property, and the exception to the vacancy exclusion would never apply if it only applied to new structures being created. Because we have decided that Jarvis was not entitled to coverage even under an interpretation that includes existing structures, we need not examine whether the district court's narrower interpretation conflicts with this provision.

She also claims that the policy is ambiguous because a loss settlement provision in the policy used the term "under construction," and, therefore, conflicted with the vacancy-exclusion exception.[1] But we do not address this argument because Jarvis raises it for the first time in her reply brief. In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived.").

Nor are we persuaded by Jarvis's argument that there were genuine disputes of material fact as to whether the house was "vacant" or "being constructed." First, we agree with the district court that any disputed fact as to whether the house was "vacant" was immaterial because the undisputed evidence showed that the house was "unoccupied." The vacancy exclusion applied where the house was "vacant" or "unoccupied," which the policy defined as "the dwelling is not being

---

[1] GeoVera has moved to strike this portion of Jarvis's reply brief. The motion is DENIED.

inhabited as a residence." Jarvis testified in a deposition that no one lived at the house after the tenant moved out on June 30, 2016.

Second, the extent of the repairs undertaken by Jarvis and her family was undisputed. While the police report of the arson described the house's renovation as "major," that description is irrelevant since, among other things, the uncontroverted evidence detailed the work that had been performed. Because there were no factual disputes about which repairs were being performed, whether that work qualified under the vacancy-exclusion exception was a question of law. See Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985) (recognizing that, under Florida law, insurance contract interpretation is a matter of law to be decided by the court).

**AFFIRMED.**